## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

NXIVM CORPORATION,                                    :
                                                      :
                  Plaintiff,        :   CASE NO.  6:13-cv-6577-MAT
                                                      :
                  v.                :
                                                      :
TONI FOLEY, JOSEPH O'HARA, JOHN TIGHE,                :
SUZANNA ANDREWS, JAMES ODATO, AND                     :
JOHN DOES 1-59,,                                      :
                                                      :
                 Defendants.       :
                                                      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

## MEMORANDUM IN SUPPORT OF RULE 12(b)(6) MOTION BY
## DEFENDANT JAMES ODATO TO DISMISS THE COMPLAINT

David A. Schulz
Julie B. Ehrlich*
Nabiha Syed*
LEVINE SULLIVAN KOCH & SCHULZ, LLP
321 West 44th Street, Suite 1000
New York, NY 10036
(212) 850-6100

*Counsel for Defendant James Odato*

  **\* Pro hac vice motions forthcoming**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .......................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 2

      A.    The Parties ..................................................................................................... 2

           1.    Plaintiff NXIVM Corporation...................................................... 2

           2.    The Defendants ............................................................................ 4

      B.    NXIVM's Complaint Against Odato ...................................................... 7

ARGUMENT ...................................................................................................................... 9

I.      THE STANDARD ON A MOTION TO DISMISS .................................................. 9

II.     THE CFAA CLAIM AGAINST ODATO IS TIME-BARRED...................................... 10

      A.    NXIVM Does Not Allege Discovery of Any "Damage"...................................... 11

      B.    NXIVM Was Reasonably on Notice by the Breach ............................................. 15

           1.    Judicial admissions in NXIVM's Complaint ............................................. 15

           2.    Other admissions of NXIVM's awareness of a potential breach............................................................................................. 17

III.    THE SCA CLAIM AGAINST ODATO IS EQUALLY TIME-BARRED...................... 19

CONCLUSION.................................................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. WestPoint-Pepperell, Inc.*,
  945 F.2d 40 (2d Cir. 1991)..................................................................................................9

*Andes v. Knox*,
  905 F.2d 188 (8th Cir. 1990) ...........................................................................................20

*Andritz, Inc. v. Southern Maintenance Contractor, LLC*,
  626 F. Supp. 2d 1264 (M.D. Ga. 2009) ..........................................................................14

*Bano v. Union Carbide Corp.*,
  361 F.3d 696 (2d Cir. 2004)............................................................................................10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..........................................................................................................9

*Boddie v. Schneider*,
  105 F.3d 857 (2d Cir. 1997).............................................................................................9

*Capitol Audio Access, Inc. v. Umemoto*,
  980 F. Supp. 2d 1154 (E.D. Cal. 2013).....................................................................13, 14

*Condux Int'l, Inc. v. Haugum*,
  No. 08-4824, 2008 WL 5244818 (D. Minn. Dec. 15, 2008) ..........................................12

*Cooper v. Parsky*,
  140 F.3d 433 (2d Cir. 1998).............................................................................................9

*Davis v. Zirkelbach*,
  149 F.3d 614 (7th Cir. 1998) ..........................................................................................20

*Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands Int'l Inc.*,
  616 F. Supp. 2d 805 (N.D. Ill. 2009) ..............................................................................13

*In re Dones*,
  Nos. 10-45608 & 10-45609, 2011 WL 5079585 (W.D. Wash. Bankr. Oct. 25, 2011) .........2, 3

*Farmers Ins. Exch. v. Auto Club Grp.*,
  823 F. Supp. 2d 847 (N.D. Ill. 2011) .........................................................................12, 14

*FTA Mkt. Inc. v. Vevi, Inc.*,
  11 CV 4789 VB, 2012 WL 383945 (S.D.N.Y. Feb. 1, 2012)..........................................11

*Garelli Wong & Assoc. v. Nichols*,
  551 F. Supp. 2d 704 (N.D. Ill. 2008) ................................................................14

*Harris v. City of N.Y.*,
  186 F.3d 243 (2d Cir. 1999).................................................................................10

*Harris v. N.Y. State Dep't of Health*,
  202 F. Supp. 2d 143 (S.D.N.Y. 2002)...................................................................9

*Kluber Skahan & Assoc., Inc. v. Cordogen, Clark & Assoc., Inc.*,
  08-CV-1529, 2009 WL 466812 (N.D. Ill. Feb. 25, 2009) ..............................12, 14

*Koch v. Christie's Int'l PLC*,
  699 F.3d 141 (2d Cir. 2012)...........................................................................15, 16

*Kramer v. Time Warner Inc.*,
  937 F.2d 767 (2d Cir. 1991)..................................................................................2

*Henik ex rel. Labranche & Co. v. Labranche*,
  433 F. Supp. 2d 372 (S.D.N.Y. 2006)...................................................................9

*Leeds v. Meltz*,
  85 F.3d 51 (2d Cir. 1996) ....................................................................................10

*Madison 92nd St. Assoc., LLC v. Courtyard Mgmt. Corp.*,
  No. 13 Civ. 3921 (CM), 2014 WL 3739322 (S.D.N.Y. July 28, 2014)............16, 17

*Mintel Int'l Grp., Ltd. v. Neergheen*,
  No. 08-CV-3939, 2010 WL 145786 (N.D. Ill. Jan. 12, 2010)........................12, 13

*Motorola, Inc. v. Lemko Corp.*,
  609 F. Supp. 2d 760 (N.D. Ill. 2009) ..................................................................12

*NetApp, Inc. v. Nimble Storage, Inc.*,
  No. 13-cv-05058-LHK (HRL), 2014 WL 1903639 (N.D. Cal. May 12, 2014) .....13

*NXIVM Corp. v. O'Hara*,
  241 F.R.D. 109 (N.D.N.Y. 2007)......................................................................2, 5

*Patrick Patterson Custom Homes, Inc. v. Bach*,
  586 F. Supp. 2d 1026 (N.D. Ill. 2008) ................................................................12

*Resdev, LLC v. Lot Builders Ass'n*,
  No. 04-cv-1374 ORL31DAB, 2005 WL 1924743 (M.D. Fla. Aug. 10, 2005) .......12

*Smartix Int'l Corp. v. Mastercard Int'l LLC*,
  No. 06 cv 5174(GBD), 2008 WL 4444554 (S.D.N.Y. Sept. 30, 2008), *aff'd on other grounds*,
  355 F. App'x 464 (2d Cir. 2009) ...................................................................10, 11

*St. John's Univ. v. Bolton*,
   757 F. Supp. 2d 144 (E.D.N.Y. 2010) ...................................................................10

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
   547 F.3d 406 (2d Cir. 2008)......................................................................15, 16

*Steinbach v. Vill. of Forest Park*,
   No. 06 C 4215, 2009 WL 2857302 (N.D. Ill. Aug. 5, 2009)...................................20

*Tan v. Doe*,
   No. 14-cv-02663 (ALC), 2014 WL 1779048 (S.D.N.Y. 2014)................................13

*Twersky v. Yeshiva Univ.*,
   993 F. Supp. 2d 429 (S.D.N.Y. 2014), *aff'd*, 2014 WL 4358415 (2d Cir. Sept. 4, 2014).......15

*U.S. Gypsum Co. v. Lafarge N. Am. Inc.*,
   670 F. Supp. 2d 737 (N.D. Ill. 2009) .................................................................13

*World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*,
   328 Fed. App'x 695 (2d Cir. 2009)....................................................................16

*Worldspan, L.P. v. Orbitz, LLC*,
   No. 05 C 5386, 2006 WL 1069128 (N.D. Ill. Apr. 19, 2006)................................13

*Ying Jing Gan v. City of N.Y.*,
   996 F.2d 522 (2d Cir. 1993)........................................................................9, 10

**Statutes & Other Authorities**

Computer Fraud and Abuse Act, 18 U.S.C. § 1030................................................ *passim*

Stored Communication Act, 18 U.S.C. § 2701 et seq. ......................................... *passim*

Fed. R. Civ. P. Rule 12(b)(6) .................................................................................9

## PRELIMINARY STATEMENT

NXIVM's complaint seeks to assert a number of claims against a disparate group of defendants who have each exposed its cult-like and legally suspect practices in some way. Defendant James Odato is a reporter for the Albany *Times Union* who has written numerous news stories about NXIVM. His reporting includes a four-part series published in 2012 that explored the reasons why NXIVM is considered to be "one of the most extreme cults" in America, and why its leader has been labeled "a compulsive gambler, a sex addict with bizarre desires and needs, and a con man that specializes in Ponzi schemes."[1] Odato's 2012 series also documented NXIVM's history as a "litigation machine" that pursues largely meritless lawsuits to punish and silence those who speak ill of the group's leader—litigating with a level of intensity that judges have described as entirely "disproportionate" and "deplorable."[2]

Unable to challenge the truth of his reporting, NXIVM in this action strains to find some ground to challenge his newsgathering conduct. NXIVM now purports to assert a six-year old technical violation by Odato of the Computer Fraud and Abuse Act and the Stored Communication Act, alleging that he accessed a password-protected website on three occasions in late 2007 and early 2008. NXIVM does not allege that Odato's access damaged its computer or affected the functionality of its website in any way, and it does not allege that Odato did anything else improper in publishing his highly detailed, well documented and widely-sourced reports about NXIVM.

---

[1] James M. Odato & Jennifer Gish, *Secrets of NXIVM*, Times Union, Feb. 12, 2012, at A6 ("Secrets of NXIVM I"), annexed as Exhibit A to the Decl. of David A. Schulz, sworn to September 30, 2014 ("Schulz Dec.").

[2] James M. Odato & Jennifer Gish, *NXIVM is a litigation machine*, Times Union, Feb. 16, 2012 at A2, A6 ("Secrets of NXIVM II").

As will appear, NXIVM is time-barred from proceeding with a stale claim that is not even alleged to have harmed its computer.  NXIVM's transparent efforts to intimidate and inflict costs on a journalist who has written extensively—and truthfully—about its own misconduct should promptly be dismissed.

STATEMENT OF FACTS[3]

**A.    <u>The Parties</u>**

**1.    Plaintiff NXIVM Corporation.**

NXIVM Corporation ("NXIVM") is an Albany-based for-profit corporation that "provides an exclusive seminar training program primarily for executives." *NXIVM Corp. v. O'Hara*, 241 F.R.D. 109, 114 (N.D.N.Y. 2007) ("*NXIVM/O'Hara I*").[4]  NXIVM's program, dubbed "Executive Success," uses an ostensibly proprietary methodology called Rational Inquiry, which "purport[s] to improve communication skills, memory, and decision-making." *Id.* NXIVM charges thousands of dollars to attend its seminars. *In re Dones*, Nos. 10-45608 & 10-45609, 2011 WL 5079585, at *3 (W.D. Wash. Bankr. Oct. 25, 2011) ("*Dones*").

NXIVM's mastermind, founder, and leader is Keith Raniere, "who is referred to by NXIVM employees and followers as 'Vanguard.'" *Id.*  While NXIVM holds itself out as a self-help company, others take a far different view of it.  For example, Rick Ross, a "cult tracker" and deprogrammer who has studied NXIVM extensively, considers NXIVM "'one of the most

---

[3]  Factual allegations in the Complaint are accepted as true solely for purpose of this motion to dismiss. Except where otherwise noted, other facts presented here are drawn from judicial records in other actions involving NXIVM, of which this Court may take judicial notice.  *See, e.g.*, *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (courts "routinely take judicial notice of documents filed in other courts").

[4]  NXIVM is incorporated in Delaware and is headquartered in and around Albany, where its "de facto leader," Keith Raniere, resides.  *NXIVM/O'Hara I*, 241 F.R.D. at 114.

2

extreme groups [he has] ever dealt with in the sense of how tightly wound it is around the leader,'" Raniere.  Secrets of NXIVM I at A6.

NXIVM is also known to be highly litigious and vindictive.  It has launched multiple lawsuits against former members and others, often alleging only small losses, but inflicting huge litigation expense.[5]  NXIVM engages in relentless motion practice and excessive discovery— abusive tactics that have not gone unnoticed by the courts.  One bankruptcy judge, for example, detailed NXIVM's "deplorable" pursuit of a former NXIVM trainer:

> Her "sin" was to attempt to walk away after discovering that NXIVM was not what she thought or hoped.  In return, she was labeled a "suppressive," a term that NXIVM applies to former associates who leave the company or whom NXIVM perceives to be its enemies, and subjected to protracted litigation from two large law firms and a phalanx of attorneys.  Despite multiple depositions and extensive discovery, they were never able to prove that Woolhouse did anything wrong.  NXIVM's treatment of Woolhouse in this adversary proceeding was, in a word, deplorable.

*Dones*, 2011 WL 5079585  at *18.  Earlier in that litigation, in asking the court to quash subpoenas issued by NXIVM, defendants documented how NXIVM was seeking to use discovery as a tool to "make a full sweep of their ex-members" who had spoken out publicly. *See* Schulz Dec. Ex. B.

A former board member and financial manager for NXIVM, Barbara Bouchey, was the target of another NXIVM litigation campaign and experienced similar abuse.  *See NXIVM v. Bouchey*, Nos. 10-90155-1 REL & 10-90136-1-REL (N.D.N.Y. Bankr.).  As Bouchey testified:

---

[5] *E.g.*, NXIVM has pursued claims of product disparagement, tortious interference, copyright, trade secret, and initiated adversarial bankruptcy proceedings that have kept its critics tied up for years in expensive litigation.  *NXIVM Corp v. Ross Institute*, No. 06-cv-1051-KSH (D.N.J. 2006) (product disparagement, tortious interference); *NXIVM Corp. v. Metroland Magazine*, No. 136445 (Sup. Ct. Niagara Cnty. 2009) (product disparagement, tortious interference), *NXIVM Corp v. Ross Institute*, No. 03-7952 (2d Cir. 2004) (copyright infringement, theft of trade secrets).

> NXIVM has brought two adversarial lawsuits against me… They've reported me to my financial planning ethics board.  They reported me to FINRA, my securities license, both for criminal investigation and misappropriation of funds, which are completely unfounded.  They [are] accusing me of extortion and criminal charges because I asked Keith Raniere to pay me back $1.6 million dollars that he owes me, which now is being mislabeled into extortion.  I've already been dragged into three or four of their other lawsuits as a witness and produced 23 boxes of material, over a hundred thousand pages.  I've sat for 30 hours of depositions already.  What this is about, in my opinion, is an attempt to intimidate me and to silence me.

Schulz Dec. Ex. C.  Magistrate Judge Randolph Treece, who handled one aspect of the *Ross* litigation in the Northern District of New York, despaired over NXIVM's litigation tactics, including a "glaringly transparent" effort to do an end-run around one court ruling by withdrawing its federal lawsuit and immediately filing a state action alleging the same claims and seeking the same relief.  Schulz Dec. Ex. D.

NXIVM's tactics do not stop with aggressive litigation.  After leaving NXIVM, defendant Toni Foley had to obtain a restraining order against a NXIVM employee who, among other things, was caught tampering with her mailbox.  *See* Schulz Dec. Ex. E.  And Rick Ross, the cult expert sued by NXIVM, has alleged that NXIVM hired private investigators who unlawfully obtained his bank records and telephone records, rummaged through his garbage, and set up a "sting operation" in an unlawful effort to manufacture evidence to use against him.  Schulz Dec. Ex. F.

### 2.  The Defendants.

The defendants are former clients and consultants who have been critical of NXIVM, and journalists who have reported on those criticisms.

Defendant Toni Foley[6] was a member of NXIVM and for a time was romantically involved with Keith Raniere.  After their relationship ended in 1999, Raniere reportedly began to harass Foley and induced others to do so too.  *See* Schulz Dec. Ex. G.  This harassment included interceding in Ms. Foley's bankruptcy proceeding in an effort to stop the court from discharging her debt.  *See* Schulz Dec. Ex. H.  Ms. Foley apparently suffers from post-traumatic stress disorder as a result of the harassment she has suffered at the hands of NXIVM and its devotees.  Secrets of NXIVM II at A7.

Defendant Joseph O'Hara is a lawyer, businessman, and lobbyist, who was retained by NXIVM in 2003 to assist it in dealing with the negative publicity generated by NXIVM's litigation against cult expert Rick Ross.  *NXIVM/O'Hara I*, 241 F.R.D. at 114-115.  O'Hara terminated his business relationship with NXIVM after learning that an investigator retained by NXIVM had illegally obtained Ross's private banking information and had conducted a "sting" operation using professional actors with the express purpose of humiliating Mr. Ross.  *See id.* at 116-117.  Since then, O'Hara has been a dogged and public critic of NXIVM.

Defendant John Tighe is another outspoken critic of NXIVM.  For many years he authored a blog entitled "Saratoga in Decline" that largely was dedicated to exposing NXIVM's suspect practices and the behavior of Raniere.  Compl. ¶ 4 [Dkt. No. 1].

Defendant Suzanna Andrews is a reporter for *Vanity Fair*.  In 2010, she wrote an article critical of NXIVM and how Raniere was siphoning off millions from the Bronfman family

---

[6] Ms. Foley has also been known as Toni Natalie and has been referred to by that name in press accounts. Because she is sued under the name Foley, she is referred to by that name throughout this memorandum.

fortune.[7]  Like Mr. Odato, Andrews is not being sued for anything she said about NXIVM; she is sued for allegedly accessing a password protected NXIVM website on five occasions in 2010.

Defendant James Odato is an investigative and political reporter for the *Times Union*, a daily newspaper published in Albany, New York.  Compl. ¶ 6.  Mr. Odato began reporting on NXIVM in 2007, when his investigation of then-Senate Majority Leader Joseph Bruno revealed that Sen. Bruno had received over $30,000 in cash donations and over $34,000 in in kind donations from NXIVM devotees Sara and Clare Bronfman.  *See* Decl. of James Odato sworn to September 29, 2014 at ¶ 14; *see also* Schulz Decl. Ex. J.

Since then, Odato has written numerous articles about NXIVM, including an extensively documented four-part series published in 2012 entitled "Secrets of NXIVM."  Schulz Dec. Ex. A.[8]  This series detailed the secretive practices of NXIVM, ranging from the bizarre (Raniere's plan to create his own country with its own currency) to the disturbing (the alleged psychological and sexual abuse perpetuated by Raniere).  Among other things, the series documented claims that Raniere "doesn't drive because his intellectual energy sets off radar detectors," and that he told Ms. Foley that she had been Heinrich Himmler, chief of Hitler's secret police "in a previous life," and NXIVM leaders "were formerly Jewish victims." Secrets of NXIVM I at A6, A7.

---

[7] *Vanity Fair* magazine published her article "The Heiresses and the Cult," in which Andrews dissects the relationship between Sara and Clare Bronfman—two heirs to the Seagram's fortune—to NXIVM and Raniere.  The article describes how the two women funded over $150 million in NXIVM expenses, "including $66 million allegedly used to cover Raniere's failed bets in the commodities market, $30 million to buy real estate in Los Angeles and around Albany, $11 million for a 22-seat, two-engine Canadair CL-600 jet, and millions more to support a barrage of lawsuits across the country against NXIVM's enemies."   Suzanna Andrews, *The Heiresses & the Cult*, Vanity Fair, Nov. 2010, *available at* http://www.vanityfair.com/culture/features/2010/11/bronfman-201011.

[8] The entire series and all related multimedia and documentation is available online at: http://www.timesunion.com/nxivm/.

**B.**   <u>**NXIVM's Complaint Against Odato**</u>

Neither Raniere nor NXIVM requested a correction or sued for defamation after Odato's series was published.  Unable to impeach the *substance* of Mr. Odato's journalism, NXIVM through this lawsuit seeks to impugn his newsgathering efforts.  NXIM filed this lawsuit under seal on October 22, 2013, purporting to assert two claims against Mr. Odato: (1) a violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (the "CFAA"), and (2) a violation of the Stored Communications Act, 18 U.S.C. § 2701 (the "SCA").[9]  A range of additional state-law tort claims are alleged against defendants Foley, O'Hara, and Tighe, but not against Odato or Andrews.  *See* Compl. ¶¶ 93-137.

As to Odato, the complaint alleges that he violated the CFAA by using a password improperly given to him by one of the other defendants to access NXIVM's server without authority and thereby "to obtain NXIVM's confidential and proprietary information."  *Id.* ¶¶ 71-82, 99.  Specifically, NXIVM alleges that it hosts on its server an internal password-protected website containing the company's "coach list," proprietary evaluation and reporting tools and other confidential information.  *Id.* ¶¶40-46.  NXIVM asserts that on October 2, 2007 Mr. Odato logged into NXIVM's website, where he allegedly "accessed" . . . confidential information and "*could* improperly access computer code to create an unofficial list of NXIVM's clients."  *Id.* ¶ 75 (emphasis added).  NXIVM then alleges that Mr. Odato "admitted" in a news story published six days later that he "had obtained a copy of NXIVM's client list."  *Id.* ¶ 77.  The Complaint

---

[9]  Concurrent with its filing, NXIVM requested that the complaint be maintained under seal because of an ongoing police investigation it had initiated.  *See* Dkt. No. 2.  That motion was granted.  *See* Dkt. No. 4. In January, with the complaint still under seal, NXIVM moved to extend the time for service.  *See* Dkt. No. 5.  The Court granted the motion, giving NXIVM an additional six months for service.  *See* Dkt. No. 6.  On August 12, 2014, with the criminal investigation apparently at its end, the Court ordered the complaint unsealed.  *See* Dkt. No. 9.  Mr. Odato was finally served on August 2, 2014. *See* Dkt. No. 13.

alleges that Odato subsequently accessed the website without permission on two additional occasions, October 8, 2007 and May 2, 2008. *Id.* ¶¶ 79-81. It contends that his access on these three occasions violates the CFAA.

The complaint asserts that the same conduct by Odato also violated the Stored Communications Act, a law that protects the content of stored electronic communications, such as email. *Id.* ¶¶ 104-111. The complaint posits, on information and belief, that Odato "intentionally accessed and copied confidential electronic communications including NXIVM's confidential client and coach lists and other proprietary information" stored in NXIVM's server "for the purpose of distributing that confidential information to third parties, including the media, and in order to harass and harm NXIVM." *Id.* ¶¶ 108-09.

NXIVM does not allege any damage whatsoever to its computer, its database or its website resulting from the alleged CFAA violations. It does not allege any limitation on the use or functionality of the website resulting from Odato's alleged access. Rather, NXIVM seeks only to recover the statutory "loss" allowed to it under the CFAA, which includes:

> any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.

18 U.S.C. 1030(e)(11). NXIVM alleges that its CFAA total "loss" resulting from the actions of all defendants amounted to $40,000.00. Compl. ¶ 102. NXIVM seeks unspecified compensatory and punitive damages and injunctive relief for the alleged violation of the SCA. *Id.* ¶ 111.

The two claims against Odato for his alleged actions more than six years ago are plainly time barred and the claims should be dismissed under Fed. R. Civ. P. Rule 12(b)(6), as will now be demonstrated.

**ARGUMENT**

**I.**

<u>**THE STANDARD ON A MOTION TO DISMISS**</u>

The standard governing this motion under Rule 12(b)(6) are well settled.  In order to survive dismissal, "a plaintiff must assert a cognizable claim and allege facts, that if true, would support such a claim." *Boddie v. Schneider*, 105 F.3d 857, 860 (2d Cir. 1997)).  On a motion to dismiss a court must assume all plaintiff's factual pleadings as true, but a plaintiff is still required to plead facts sufficient to demonstrate the existence of a plausible claim. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556-57 (2007).  In this regard, the complaint will be deemed to include any documents attached as an exhibit or incorporated by reference. *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991).

On a motion to dismiss, a court also "may take judicial notice of admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings that contradict the party's factual assertions in a subsequent action." *Harris v. N.Y. State Dep't of Health*, 202 F. Supp. 2d 143, 173 n. 13 (S.D.N.Y. 2002).  "[T]he truth of factual allegations that are contradicted by documents properly considered on a motion to dismiss need not be accepted." *Henik ex rel. Labranche & Co. v. Labranche*, 433 F. Supp. 2d 372, 376 (S.D.N.Y. 2006).  Similarly, bald assertions and conclusions of law are not sufficient to state a claim upon which relief can be granted, *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998), nor are "'legal conclusions, deductions or opinions couched as factual allegations. . . given a presumption of

9

truthfulness.'" *Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 534 (2d Cir. 1993) (citation omitted); *see Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996) ("While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice").

On a Rule 12(b)(6) motion, the court may dismiss an action based on the statute of limitations if, on the face of the complaint, it is clear that the claim is untimely. *Harris v. City of N.Y.*, 186 F.3d 243, 250 (2d Cir. 1999). Demonstrating untimeliness is the defendant's burden, which is generally met by "'showing when the cause of action accrued.'" *St. John's Univ. v. Bolton*, 757 F. Supp. 2d 144, 157 (E.D.N.Y. 2010) (quoting *Bano v. Union Carbide Corp.*, 361 F.3d 696, 710 (2d Cir. 2004)).

## II.
## <u>THE CFAA CLAIM AGAINST ODATO IS TIME-BARRED</u>

NXIVM's claim against Odato for a technical violation of the CFAA is based on his alleged access to its password protected website on three occasions in 2007 and 2008; the most recent access alleged is May 2, 2008. Compl. ¶ 81. On the allegations in the Complaint and judicial admissions of which the Court may properly take notice, this claim is plainly time-barred.

Section 1030(g) of the CFAA authorizes a private right of action when a claim is brought "within two years of the act complained of" and, in situations where unauthorized access causes some harm to the computer or data that is not immediately evident, a claim may be brought within two years of "the date of discovery of the damage." 18 U.S.C. § 1030(g). NXIVM plainly did not sue within two years of Odato's alleged conduct in 2007 and 2008, so its claim is timely only if this action was brought within two years of NXIVM's "discovery" of "damage," as provided by the CFAA. *See id.* & 18 U.S.C. § 1030(e)(8); *see also Smartix Int'l Corp. v.*

*Mastercard Int'l LLC*, No. 06 cv 5174(GBD), 2008 WL 4444554, at *3 (S.D.N.Y. Sept. 30, 2008) (action must be commenced within two years "'from the date of discovery of the damage'") (citation omitted), *aff'd on other grounds*, 355 F. App'x 464 (2d Cir. 2009).  It was not.

NXIVM conspicuously attempts to satisfy the discovery-of-damage requirement by vaguely pleading that it had no suspicion of any unauthorized access until "late 2011." Compl. ¶52.[10]  The Complaint itself defeats the effort:  NXIVM does not allege any "damage" of the type required to trigger the savings clause, and even if no such "damage" was required by the CFAA, the complaint demonstrates that NXIVM was reasonably on notice that its confidential website was being accessed without authorization more than two years before filing this lawsuit.  This conclusion is emphatically confirmed by the judicial admissions of NXIVM in other lawsuits, confirming that its claims against Odato are time barred.

## A.   NXIVM Does Not Allege Discovery of Any "Damage"

"Damage" is a term of art under the CFAA, defined specifically as an "impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). NXIVM pleads that all defendants allegedly "copied, stole, and otherwise impaired the integrity of" information on its website, Compl. ¶ 100, and in so doing allegedly "impaired the client privacy confidence." Compl. ¶ 101.  These averments do not allege any "damage" within the meaning of the CFAA.

---

[10] Courts have rejected for vagueness alone such ambiguous assertions of unauthorized access.  *See, e.g.*, *FTA Mkt. Inc. v. Vevi, Inc.*, 11 CV 4789 VB, 2012 WL 383945, at *4 (S.D.N.Y. Feb. 1, 2012) (where access was alleged on information and belief, court dismissed claim on statute of limitations grounds because "[p]laintiff should know whether its system is compromised.")

The CFAA's definition of "damage contemplates harm to data and information," and thus requires tangible harm to data—such as destruction, deletion, corruption, or shredding.[11]  Courts repeatedly have held that "damage" refers to "the destruction, corruption, or deletion of electronic files, the physical destruction of a hard drive, or any 'diminution in the completeness or usability of the data on a computer system.'"  *Farmers Ins. Exch. v. Auto Club Grp.*, 823 F. Supp. 2d 847, 852 (N.D. Ill. 2011) (citation omitted); *see also Mintel Int'l Grp., Ltd. v. Neergheen*, No. 08-CV-3939, 2010 WL 145786, at *9 (N.D. Ill. Jan. 12, 2010) ("damage" occurs where "data is lost or impaired because it was erased or otherwise destroyed, or in which computer networks or databases are disabled"); *Motorola, Inc. v. Lemko Corp.*, 609 F. Supp. 2d 760, 769 (N.D. Ill. 2009) (same); *Patrick Patterson Custom Homes, Inc. v. Bach*, 586 F. Supp. 2d 1026, 1035-37 (N.D. Ill. 2008) (plaintiff properly alleged damage where it claimed "permanent deletion and shredding of substantial files"); *Condux Int'l, Inc. v. Haugum*, No. 08-4824 ADM/JSM, 2008 WL 5244818, at *7-8 (D. Minn. Dec. 15, 2008) (CFAA definition of damage requires "some 'diminution in the completeness or usability of data or information on a computer system'") (citations omitted); *Resdev, LLC v. Lot Builders Ass'n*, No. 04-cv-1374 ORL31DAB, 2005 WL 1924743, at *5 n. 3 (M.D. Fla. Aug. 10, 2005) (impairment to the "integrity" of data requires "some diminution in the completeness or usability of data or information on a computer system").

NXIVM alleges no such damage caused by Mr. Odato.  Instead, NXIVM claims that Mr. Odato's public disclosure that he had obtained its client list caused damage by impairing the "integrity" of NXIVM's confidential information (Compl. ¶100) and impairing "client privacy

---

[11] This strict limitation on damage is particularly appropriate given that the CFAA is primarily a criminal statute. *See Kluber Skahan & Assoc., Inc. v. Cordogen, Clark & Assoc., Inc.*, 08-CV-1529, 2009 WL 466812, at *6 (N.D. Ill. Feb. 25, 2009).

confidence" (*id*. ¶101).  But disclosure of confidential data does not constitute damage under the

CFAA.  As has been held:

> Downloading and circulating even confidential information from a
> computer is not enough to cause damage to a computer within the
> meaning of the statute, as there must be some 'destruction or the
> impairment to the integrity of the underlying data.'

*Tan v. Doe*, No. 14-cv-02663 (ALC), 2014 WL 1779048, at *2 (S.D.N.Y. 2014).

This principle is well established.  CFAA's damage requirement is not satisfied due to

"the intrinsic value" of proprietary or confidential information disclosed without authorization.

*U.S. Gypsum Co. v. Lafarge N. Am. Inc.,* 670 F. Supp. 2d 737, 743 (N.D. Ill. 2009).  *See also*,

*e.g.*, *NetApp, Inc. v. Nimble Storage, Inc*., No. 13-cv-05058-LHK (HRL), 2014 WL 1903639, at

*13 (N.D. Cal. May 12, 2014) (disclosure of information that "derives value from its

exclusivity," does not constitute damage under CFAA); *Mintel,* 2010 WL 145786 at *9

("copying, e-mailing or printing electronic files from a computer database is not enough to

satisfy the damage requirement of the CFAA"); *Del Monte Fresh Produce, N.A., Inc. v. Chiquita

Brands Int'l Inc*., 616 F. Supp. 2d 805, 811 (N.D. Ill. 2009)) ("downloading and e-mailing

confidential information is insufficient to show damages under the CFAA"); *Worldspan, L.P. v.

Orbitz, LLC,* No. 05 C 5386, 2006 WL 1069128, at *5 (N.D. Ill. Apr. 19, 2006) ("the mere

'taking of information'" does not constitute "damage" under CFAA).

Even purposeful, wrongful disclosure of data does not constitute CFAA "damage."  For

example, in *Capitol Audio Access, Inc. v. Umemoto*, 980 F. Supp. 2d 1154 (E.D. Cal. 2013), the

defendant acquired a user license to access a proprietary online document that listed dates, times,

and places for upcoming events, as well as confidential reports about and research studies on

various political issues.  Each license was intended for a single user, and required the payment of

13

a subscription fee in order to maintain access.  *Id*. at 1156.  In violation of the user license, the

defendant purposefully shared the confidential passcode to the online document with several

others, wrongfully disclosing confidential and proprietary information and depriving plaintiff of

subscription income.  *Id*.  The court found that this disclosure of the password and confidential

content did not cause "any impairment to the integrity or availability of data, a program, a

system, or information," and thus did not constitute "damage" under the CFAA.  *Id*. at 1158.

The narrow statutory definition of damage thus applies even when confidential

information such as trade secrets or intellectual property is disclosed for financial gain.  As held

in *Farmers Insurance Exchange v. Auto Club Group*, "the disclosure of trade secrets

misappropriated through unauthorized computer access does not qualify as damage under the

CFAA's definition of the term."  823 F. Supp. 2d at 852.  *See, e.g.*, *Garelli Wong & Assoc. v.

Nichols*, 551 F. Supp. 2d 704, 710 (N.D. Ill. 2008) (misappropriation of trade secrets does not

constitute damage under CFAA).

So also here, NXIVM has not alleged any "damage" under the CFAA through allegations

of the disclosure of its confidential information.  As explained in *Andritz, Inc. v. Southern

Maintenance Contractor, LLC*, 626 F. Supp. 2d 1264, 1266-67 (M.D. Ga. 2009):

> After the alleged theft of the data, Plaintiff still had access to the data
> just as it had before Defendants' actions.  The alleged CFAA violation is
> not that Defendants deleted or altered any data but that Defendants used
> the data inappropriately. . . . While a remedy may exist for such conduct,
> Congress did not provide one in CFAA.

Disclosure of confidential and proprietary information simply does not constitute the type of

harm to the integrity of data, a program or a system that qualifies as "damage" under the CFAA.

Because NXIVM has not alleged any CFAA "damage," its claim against Odato based on

conduct more than six years ago is plainly time-barred and should be dismissed.  *See Kluber*

14

*Skahan & Assoc.*, 2009 WL 466812 at *8 (only the "discovery of damage" can lengthen the statute of limitations, not loss).

**B.**   **NXIVM Was Reasonably on Notice by the Breach**

Even if NXIVM could demonstrate damage under the CFAA (which it cannot), NXIVM's claim would still be time-barred.  As the Complaint and other judicial admissions reveal, NXIVM was reasonably on notice of the unauthorized access to its website well before October 23, 2011, two years from the date its Complaint was filed.

Under a "discovery rule" such as that provided in the CFAA, the discovery that starts the clock on the limitations period is "when the plaintiff has 'inquiry notice' of his injury, namely, when he discovers or reasonably should have discovered the ... injury."  *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 148 (2d Cir. 2012) (discovery rule in cases involving fraud) (internal quotation marks and citations omitted); *see also Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 438 (S.D.N.Y. 2014), *aff'd*, 2014 WL 4358415 (2d Cir. Sept. 4, 2014) (same).  As the Second Circuit has instructed, discovery occurs as soon as a plaintiff has:

> notice of the facts, which in the exercise of reasonable diligence, would have led to actual knowledge.  When there is no actual knowledge, but the circumstances would suggest to an [individual] of ordinary intelligence the probability that she has been defrauded, a duty of inquiry arises, and knowledge will be imputed to the [individual] who does not make such an inquiry.

*Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 411 (2d Cir. 2008) (internal quotation marks and citations omitted).  NXIVM had such inquiry notice well before October 23, 2011.

**1.   Judicial admissions in NXIVM's Complaint.**

NXIVM's complaint itself demonstrates that NXIVM was on "inquiry notice" that its website was being accessed without permission more than two years before this case was filed.

For example, the Complaint alleges that NXIVM was aware of the public disclosure of confidential information taken from its password-protected site as early as October 2007.

Specifically, NXIVM alleges that Mr. Odato "admitted" in an October 8, 2007 story published in the *Times Union* that he "had obtained a copy of NXIVM's client list" to verify that two local political consultants were in fact students of NXIVM.  Compl. ¶ 77.  The Complaint also alleges that defendant John Tighe "published confidential information from NXIVM's current coach list on his public blog… on August 7, 2011." *Id.* ¶ 121.  In fact, NXIVM's complaint acknowledges the "frequent publication of the identity of NXIVM clients," ¶ 121, as well as the "confidential coach list," ¶ 130.  It also alleges that confidential information about NXIVM events was wrongfully obtained in July 2010, September 2010, January 2011, July 2011, and September 2011.  *Id.* ¶ 84-86.

On these allegations, the complaint itself establishes NXIVM had ample reason to suspect that its server and confidential client list had been breached long before October 2011. The complaint reveals that NXIVM was aware of multiple unauthorized disclosures of its confidential information and these disclosures would reasonably put a person of ordinary intelligence on inquiry notice of an unauthorized access to that information.  *Staehr*, 547 F.3d at 411.  *See Koch*, 699 F.3d at 153 (press reports discussing the provenance of wine purchased by plaintiff were sufficient to place him on inquiry notice that defendants had fraudulently misrepresented the wine's provenance); *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 328 Fed. App'x 695, 698 (2d Cir. 2009) (bid-rigging for videogame licenses "was open and notorious, and a reasonable person – especially a sophisticated party such as plaintiff – would have investigated and brought suit within the statute of limitations period"); *Madison 92nd St. Assoc., LLC v. Courtyard Mgmt. Corp.*,  No. 13 Civ. 3921 (CM), 2014 WL 3739322, at *12

(S.D.N.Y. July 28, 2014) ("a reasonably intelligent person would have recognized the inconsistency" between two agreements, and should "at least have been aware that something was fishy, and needed further examination").

Once NXIVM realized that information available only from its password-protected website was available in the public domain, it was on inquiry notice of a problem.  An investigation into the unauthorized access would have revealed long ago the same access from unauthorized IP addresses belatedly presented in the complaint.

### 2. Other admissions of NXIVM's awareness of a potential breach.

Other judicial admissions confirm what is entirely evident from the face of NXIVM's complaint—that NXIVM was aware of a breach of its website before October 2011.  During a bench trial in a bankruptcy case involving a former NXIVM client, NXIVM's counsel on September 21, 2011 posed the following series of questions to the debtor, Susan Dones, who was appearing *pro se*:

NXIVM:   So you remember having discussions with Joe O'Hara about the confidential client list, correct?

Dones:    I don't remember the client list. I remember them talking about sending out an email, and I told him it was a stupid idea.

NXIVM:   And where do you think that Mr. O'Hara got that confidential client list?

Dones:    I have no idea.

• • •

NXIVM:   You didn't have a copy of it?

Dones:    This is from their intranet.  Mine was on an Excel spreadsheet.

NXIVM:   And so you had access to their intranet, correct?

Dones:    Until I left, that's correct.

> NXIVM:   *You provided intranet access to Mr. O'Hara and to the*
> *confidential client list of NXIVM –*
>
> • • •
>
> NXIVM:   You mean to say, Ms. Dones, in all these communications with Mr.
> O'Hara about disrupting NXIVM's Vanguard Week with a client
> list, nobody had any discussions about where the client list came
> from?
>
> Dones:    I didn't ask them where the client list came from.

Schulz Dec. Ex. I at 57:8 – 58:12.  As the questioning makes clear, NXIVM counsel by the time

of this hearing plainly suspected that Mr. O'Hara had been provided unauthorized "internet

access' to its confidential information by Ms. Dones.

Earlier in that same trial, Clare Bronfman, an executive board member at NXIVM,

testified about unauthorized disclosures of NXIVM information that appeared regularly on the

blog of defendant Tighe:

> Q:        Okay. So when you say curriculum has been posted on what
> you're [terming] the hate blog, what curriculum has showed up
> there?
>
> Bronfman: There's been a contract -- a community contract that has showed
> up on there. There has been information. There's been a field
> trainer guide book that has all of our field trainer, which is our
> comments board for --our field trainers are the head of our
> commerce, in essence. The notebook relating to the field trainers
> has been on the blog.
>
> • • •
>
> Q:        And do you know how those student lists got to the blog?
>
> Bronfman: Somebody who had access to them gave them to the person who
> posted the blog or posted them on the blog.
>
> Q:        Okay. I don't know, just based on my experience in what is in the
> exhibits, it looks like that information came from NXIVM's
> intranet.

Bronfman:   Correct.

Q:   Okay.

Bronfman:   Or it came from somebody who had access and printed off information from NXIVM's intranet.

Q:   Okay. And so have you done an analysis on when that student list could have possibly been put on the blog?

Bronfman:   There are several times at which the student list was put on the blog.

Q:   And have you done an analysis? I mean, Ms. Woolhouse and I haven't had access to NXIVM's intranet since we resigned.

Bronfman:   I have not done that analysis, no. That's not the only place that I believe that the client list has appeared.

Schulz Dec. Ex. I at 90:3-12 & 91:11 – 92:5.

The transcript speaks for itself.  At the time of this hearing a NXIVM board member was fully aware of unauthorized access to its intranet and client list—or at least expressed actual concern that such access had occurred.  NXIVM plainly was on inquiry notice of a possible CFAA violation by no later than September 21, 2011, more than two years before it initiated this lawsuit on October 22, 2013.

In short, the CFAA two years from "discovery" limitations period began to run before October 22, 2011, and NXIVM's claim against Mr. Odato is time-barred for this reason as well.

### III.
### THE SCA CLAIM AGAINST ODATO IS EQUALLY TIME-BARRED

Civil actions under the Stored Communications Act "may not be commenced later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation." 18 U.S.C. §2707(f).  As demonstrated above, NXIVM had discovered—or reasonably should have discovered—by no later than September 2011.  Accordingly the SCA

claim is time-barred as well.  *See Davis v. Zirkelbach*, 149 F.3d 614, 618 (7th Cir. 1998) ("Like many statutes of limitation, this one does not require the claimant to have actual knowledge of the violation; it demands only that the claimant have had a reasonable opportunity to discover it."); *Steinbach v. Vill. of Forest Park*, No. 06 C 4215, 2009 WL 2857302, at *2 (N.D. Ill. Aug. 5, 2009) (same); *Andes v. Knox*, 905 F.2d 188, 189 (8th Cir. 1990) (SCA cause of action accrued when plaintiff became aware that former husband recorded her phone calls, not when she learned of defendants' role in the wiretapping).

## CONCLUSION

For the foregoing reasons, Odato respectfully requests that NXIVM's complaint as against him be dismissed with prejudice.

Dated:    October 1, 2014                    Respectfully submitted,

                                            LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.


By:   /s/ David A. Schulz
      David A. Schulz
      Julie B. Ehrlich
      Nabiha Syed
321 West 44th Street, Suite 1000
New York, NY 10036
(212) 850-6100

*Counsel for Defendant James Odato*

21