UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

NXIVM Corporation,

                Plaintiff,

    -vs-

TONI FOLEY, JOSEPH O'HARA,
JOHN TIGHE, SUZANNA ANDREWS,
JAMES ODATO, and JOHN DOES 1-59,

                Defendants.

Civil Action No.: 14-CV-01375

---

# MEMORANDUM OF LAW IN OPPOSITION OF DEFENDANT JAMES ODATO'S RULE 12(b)(6) MOTION TO DISMISS

---

**THE WOLFORD LAW FIRM LLP**
Michael R. Wolford, Esq.
Laura A. Myers, Esq.
*Attorneys for Plaintiff*
*NXIVM Corporation*
600 Reynolds Arcade Building
16 East Main Street
Rochester, New York  14614
Telephone:  (585) 325-8000

**O'CONNELL & ARONOWITZ, P.C.**
Pamela A. Nichols, Esq.
54 State Street, 9th Floor
Albany, New York 12207
Telephone:  (518) 462-5601

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ...................................................................................ii

PRELIMINARY STATEMENT ............................................................................. 1

STATEMENT OF FACTS ................................................................................... 1

ARGUMENT ....................................................................................................... 5

POINT I    ALL EXTRINSIC DOCUMENTS AND INFORMATION REFERENCED IN DEFENDANT ODATO'S MOTION TO DISMISS SHOULD BE DISREGARDED ................................... 5

    A.    The Documents Cited and Attached by Defendant Odato are Not "Integral to the Complaint" ................................................................. 6

    B.    Defendant Odato's Requests for Judicial Notice are Inappropriate and Should be Denied ......................................................................... 8

    C.    Consideration of Extrinsic Evidence Requires Conversion of Defendant Odato's Motion to Dismiss to a Motion for Summary Judgment .................................................................. 10

POINT II    NXIVM'S CFAA CLAIM SHOULD NOT BE DISMISSED .................................................................... 11

    A.    NXIVM has Adequately Pled Defendant Odato's Violation of the CFAA ........................... 11

    B.    NXIVM's Claim under the CFAA was Timely Filed ..................................................................... 13

        1.    NXIVM Has Alleged "Damage" for Statute of Limitations Purposes ........................... 13

        2.    NXIVM Alleged "Discovery of Damage" Within Two Years of Filing its Complaint ........................................................... 19

3.   The Federal Discovery Rule Applies to Plaintiff's CFAA Claim ...................................... 22

POINT III   NXIVM'S SCA CLAIM SHOULD NOT BE DISMISSED ................. 24

A.   NXIVM has Adequately Pled its SCA Claim Against Defendant Odato ................................................. 24

B.   NXIVM's Claim under the SCA was Timely Filed ........................................................................ 24

CONCLUSION ................................................................................................. 28

## TABLE OF AUTHORITIES

**CASES:**                                                                                          **Page**

Alcantara v. Bakery and Confectionery Union and Indus. and Int'l Pension Fund
Pension Plan
    751 F.3d 712d Cir. 2014) ............................................................................. 14

Andes v. Knox
    905 F.2d 188 (8th Cir. 1990) ....................................................................... 28

Andritz, Inc. v. S. Maint. Contractor, LLC
    626 F. Supp.2d 1264 (M.D. Ga. 2009) ...................................................... 18

Capitol Audio Access, Inc. v. Umemoto
    980 F. Supp.2d 1154 (E.D. Cal. 2013) ...................................................... 18

Chambers v. Time Warner, Inc.
    282 F.3d 147 (2d Cir. 2002) ..................................................................... 6, 7

Clark Street Wine and Spirits v. Emporos Systems Corporation
    754 F. Supp.2d 474 (E.D.N.Y. 2010) .................................................... 19, 20

Condux Int'l., Inc. v. Haugum
    No. 08-4824,
    2008 WL 5244818 (D. Minn. Dec. 15, 2008) ........................................... 17

Davis v. Zirkelbach
    149 F.3d 614 (7th Cir. 1998) ...................................................................... 28

Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands Int'l
    616 F. Supp.2d 805 (N.D. Ill. 2009) .......................................................... 18

Farmers Ins. Exch. v. Auto Club Group
    823 F. Supp.2d 847 (N.D. Ill. 2011) .......................................................... 18

Faulkner v. Beer
    463 F.3d 130 (2d Cir. 2006) ......................................................................... 7

FTA Mkt. Inc. v. Vevi, Inc.
    11 CV 4789,
    2012 WL 383945 (S.D.N.Y. Feb. 1, 2012) ............................................... 16

Garelli Wong & Assoc., Inc. v. Nichols
    551 F. Supp.2d 704 (N.D. Ill. 2008) .......................................................... 18

**CASES:**                                                                                                      **Page**

Global Network Commc'ns, Inc. v. City of New York
        458 F.3d 150 (2d Cir. 2006) .............................................................. 5, 6, 8, 9, 11

Harris v. City of New York
        186 F.3d 243 (2d Cir. 1999) ...................................................................... 13

Harris v. New York State Dept. of Health
        202 F. Supp.2d 143 (S.D.N.Y. 2002)............................................................ 9

Henik ex rel. Lanbranche & Co. v. Labranche
        433 F. Supp.2d 372 (S.D.N.Y 2006).............................................................. 9

HUB Group, Inc. v. Clancy
        No. Civ. A 05-2046,
        2006 WL 208684 (E.D. Pa. Jan. 25, 2006)..................................................... 15

I.M.S. Inquiry Mgmt Sys., Ltd. v. Berkshire Info. Sys., Inc.
        307 F. Supp.2d 521 (S.D.N.Y. 2004)................................................... 12, 14, 18

In re marchFIRST Inc.
        589 F.3d 901 (7th Cir. 2009) ..................................................................... 13

In re Merrill Lynch Tyco Research Sec. Litig.
        No. 03 CV 4080, 2004 WL 305809 (S.D.N.Y. Feb. 18, 2004).............................. 9

Int'l  Audiotext Network, Inc. v. Am. Tel. & Tel. Co.
        62 F.3d 69 (2d Cir. 1995) ........................................................................... 6

Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.
        146 F.3d 66 (2d Cir. 1998) ................................................................... 8, 9, 10

Ipreo Holdings, LLC v. Thomson Reuters Corp.
        No. 09 CV 8099,
        2011 WL 855872 (S.D.N.Y. March 8, 2011) ................................................. 24

Johnson v. Levy
        812 F. Supp.2d 167 (E.D.N.Y. 2011)............................................................. 9

Kluber Skahan & Assoc., Inc. v. Cordogen, Clark & Assoc.
        No. 08 cv 1529,
        2009 WL 466812 (N.D. Ill. Feb. 25, 2009) ................................................ 17, 18

Koch v. Christie's Intern. PLC
        699 F.3d 141 (2d Cir. 2012) ...................................................................... 21

v

**CASES:**                                                                                                    **Page**

Kramer v. Time Warner, Inc.
    937 F.2d 767 (2d Cir. 1991) ................................................................. 5

Kronisch v. United States
    150 F.3d 112, 121 (2d Cir. 1998)......................................................... 22

Lopez v. Pena
    No. 2-12-cv-165,
    2013 WL 819373 (N.D. Tex. March 5, 2013)....................................... 27

LVRC Holdings LLC v. Brekka
    581 F.3d 1127 (9th Cir. 2009)............................................................... 18

Mintel Int'l Group, Ltd. v. Neergheen
    No. 08 CV 3939,
    2010 WL 145786 (N.D. Ill. Jan. 12, 2010) ........................................... 17

Motorola, Inc. v. Lemko Corp.
    No. 08 C 5427,
    2010 WL 1474795 (N.D. Ill. April 12, 2010) ........................................ 17

Nelly de Vuyst, USA, Inc. v. Europe Cosmetiques, Inc.
    No. 11 CV 1491,
    2012 WL 246673 (S.D.N.Y. Jan. 6, 2012) .......................................... 13

NetApp., Inc. v. Nimble Storage, Inc.
    No. 5:13 CV 05058,
    2014 WL 1903639 (N.D. Cal. May 12, 2014)...................................... 18

Resdev, LLC v. Lot Builders Assoc., Inc.
    No. 6:04cv1374,
    2005 WL 1924743 (M.D. Fla. Aug. 10, 2005) .................................... 17

Shurgard Storage Ctrs., Inc. v. Safeguard Self Storage, Inc.
    119 F. Supp.2d 1121 (W.D. Wa. 2000) .............................................. 15

Sparshott v. Feld Entm't, Inc.
    311 F.3d 425 (D.C. Cir. 2003) ............................................................. 25

Staehr v. Hartford Fin. Servs. Grp. Inc.
    547 F.3d 406 (2d Cir. 2008) ................................................................ 21

**CASES:**                                                                    **Page**

Steinbach v. Vill. of Forest Park
    No. 06 C 4215,
    2009 WL 2857302 (N.D. Ill. Aug. 5, 2009)........................................................ 28

Tan v. Doe,
    No. 14 cv 2663,
    2014 WL 1779048 (S.D.N.Y. May 5, 2014) .................................................... 16

Thompson v. Metropolitan Life Ins. Co.
    149 F. Supp.2d 38 (S.D.N.Y. 2001).................................................................. 23

T-Mobile USA, Inc. v. Terry
    862 F. Supp.2d 1121 (W.D. Wa. 2012) ............................................................ 15

Twersky v. Yeshiva University
    993 F. Supp.2d 429 (S.D.N.Y. 2014)................................................................. 21

U.S. Gypsum Co. v. Larfarge North Am. Inc.
    670 F. Supp.2d 737 (N.D. Ill. 2009 ) ........................................................... 17, 18

U.S. v. Valle
    No. 12 Cv 847,
    2014 WL 2980256 (S.D.N.Y. June 30, 2014) ............................................. 13, 14

Worldspan, L.P. v. Orbitz, LLC
    No. 05 C 5386,
    2006 WL 1069128 (N.D. Ill. Apr. 19, 2006).......................................................18

Zaratzian v. Abadir
    No. 10 CV 9049
    2014 WL 4467919 (S.D.N.Y. Sept. 2, 2014)........................................... 25, 26, 27

**STATUTES:**

18 U.S.C. §1030(a)(2)(C) ............................................................................... 11, 12
18 U.S.C. §1030(a)(4) ......................................................................................... 11
18 U.S.C. §1030(a)(6)(A) .................................................................................... 11
18 U.S.C. §1030(c)(4)(A)(i) ................................................................................. 12
18 U.S.C. §1030(c)(4)(A)(i)(l) ............................................................................. 12
18 U.S.C. §1030(e)(11) ....................................................................................... 12
18 U.S.C. §1030(e)(8) ............................................................................. 13, 14, 15
18 U.S.C. §1030(g) ....................................................................................... 13, 19
18 U.S.C. §2701(a) .............................................................................................. 23
18 U.S.C. §2707(f) ............................................................................................... 24
42 U.S.C. §1981................................................................................................... 23

**<u>STATUTES</u>:**                                                            **<u>Page</u>**

42 U.S.C. §1982 ................................................................................................. 23
Fed. R. Civ. P. 12(b) ........................................................................................... 11
Fed. R. Civ. P. 12(b)(6) ......................................................................... 1, 5, 6, 10
Federal Rule of Evidence 201 ................................................................. 8, 10, 22
Federal Rule of Evidence 201(b) ............................................................................ 9
Fed. R. Civ. P. 12(d) ...................................................................................... 10, 11
Fed R. Civ. P. 56 ................................................................................................. 10

## PRELIMINARY STATEMENT

NXIVM Corporation ("NXIVM" or "Plaintiff") submits this Memorandum of Law in opposition to the motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) brought by defendant James Odato.  Defendant Odato seeks dismissal of certain claims set forth in NXIVM's Complaint, which was filed with the Court on October 22, 2013 (hereinafter "Complaint").  Dkt. No. 1.[1]  As set forth below, the positions advanced by defendant Odato lack merit and it is respectfully submitted that defendant Odato's motion to dismiss should be denied in its entirety.

## STATEMENT OF FACTS

NXIVM, is a Delaware for-profit corporation with its principal place of business in Albany, New York and it sells professional success training programs.  Complaint at ¶1. NXIVM was founded in 1998, and since that time has helped develop and has licensed a large library of materials, which it uses in support of its professional success training programs.  Id. at ¶1, 13, 14.  NXIVM helped develop these materials over time at a significant expense, and NXIVM goes to great lengths to keep these materials confidential and proprietary.  Id. at ¶14, 17-19, 31.   These materials constitute intellectual property, and NXIVM requires every client and employee who have access to these materials to sign a confidentiality agreement.  Id. at ¶11, 17-19, 31.  NXIVM has also invested a significant amount of time and expense developing its private client list, and a large amount of NXIVM's current income is a direct result of NXIVM's continued relationship with its clients.  Id. at ¶21-29.

---

[1]      "Dkt. No. ___" refers to the corresponding entry in the Clerk's docket of this case.

1

NXIVM established an interactive confidential and proprietary website (hereinafter "Password Protected Website"), which is saved on NXIVM's server and is maintained by NXIVM's Information Technology personnel for the exclusive use of NXIVM's clients and staff. Id. at ¶32. NXIVM's Password Protected Website can only be accessed with a NXIVM username and password or by using a specialized formula. Id. at ¶33. The level of access available to NXIVM clients and staff on the Password Protected Website varies depending on the user's role within NXIVM.  A client who is new to NXIVM will only have the most basic access to NXIVM's Password Protected Website.  Id. at ¶35.  This person would only be able to send or receive messages, review NXIVM's calendar of events, or sign up for future NXIVM courses or events.  Id. In contrast, NXIVM's clients who have chosen to take a more active role will have greater access to NXIVIM's confidential and proprietary information, such as NXIVM's client and coach lists and detailed information regarding NXIVM's annual retreat. Id. at ¶40-41, 48.  For example, one of the more active roles within the company is that of "coach."  A coach is an individual who has chosen to work with NXIVM professionally in an apprentice-type role, and receives financial compensation for working in this position. Id. at ¶38-39.  A NXIVM member with the role of "coach" has broader access to NXIVM's Password Protected Website, including access to its confidential and proprietary information, such as its coach and client list and Magnificence Reports page which allows NXIVM clients to send messages to other clients as well as to NXIVM's leaders and staff.  Id. at ¶39-40, 46.  Prior to filing its Complaint, NXIVM had recently learned that a person accessing the Magnificence Reports page can access code from which they can create an unofficial client list.  Id. at ¶42.  The Password Protected

2

Website also contains resources, such as a humanities questionnaire, Knowledge Base page, Coach Evaluation Tool, Goal Reporting Tools and Humanities page, among others. Id. at ¶42-46.   While NXIVM carefully protects its confidential and proprietary information, its Password Protected Website is not the sole source of this information, or specifically, NXIVM's client list.  Id. at ¶13, 16, 18, 19, 22-25, 31, 40, 41.

In late 2011, NXIVM first became suspicious that unauthorized users were accessing its Password Protected Website.  Id. at ¶52.  As a result, NXIVM had its IT personnel perform an investigation of the NXIVM members who had been recently accessing NXIVM's Password Protected Website. Id. at ¶53.  In January 2012, NXIVM was able to confirm that one of its clients, who was on good terms with NXIVM, but had not recently been active, (hereinafter referred to as "Client P") had not used her username or password since 2003.  Id.  However, the results of NXIVM's investigation revealed that Client P's username and password had been routinely used to access the Password Protected Website on hundreds of occasions between 2006 and 2011. Id. at ¶53, 57.   Also, Client P confirmed that she had not given her username or password to anyone else, nor had she given anyone permission to use her username and password. Id. at ¶55.  Client P had achieved the position as a "coach" at NXIVM, and therefore had extensive access to the confidential and proprietary information contained on NXIVM's Password Protected Website.  Id. at ¶54.

Based on further investigation, after January 2012 NXIVM was able to determine that some of the IP addresses that wrongfully accessed its Password Protected Website belonged to the defendants in this case, including defendant Odato. Id. at ¶74, 79. 81. Specifically, defendant Odato accessed NXIVM's Password Protected Website using

Client P's username and password on October 2, 2007, October 8, 2007 and May 2, 2008. Id. at ¶¶74-82. NXIVM's IT personnel determined that defendant Odato accessed a number of pages on NXIVM's website, including its Magnificence Reports, Goal Reporting Tools, humanities questionnaire, coach list, client list and corporate retreat information. Id. NXIVM believes that defendant Odato viewed and copied NXIVM and its client's confidential and proprietary information from these web pages. Id. at ¶59, 74-82.

As a result of NXIVM's discovery of the defendants' repeated unauthorized access to NXIVM's Password Protected Website, NXIVM filed suit against the defendants on October 22, 2013. Dkt. No. 1. At that time, NXIVM also filed a motion with the Court requesting that its Complaint be filed under seal. Dkt. No. 2. The basis for this motion was an ongoing criminal investigation being conducted by the New York State Police (hereinafter "State Police") into the defendants' criminal trespass of NXIVM's computer server. See Affidavit of Special District Attorney, Bruce Lennard, Esq. (hereinafter "Lennard Aff.") at ¶1-3, Dkt No. 2 at Ex A. NXIVM was compelled to file its civil Complaint at this time, due to statute of limitations concerns, but did not want to compromise the ongoing criminal investigation of the same defendants. Id. at ¶4-8; Affidavit of Michael R. Wolford, Esq. (hereinafter "Wolford Aff.") at ¶3, Dkt. No. 2. The Court granted that motion, and filed NXIVM's Complaint under seal. Dkt. No. 4.

On January 31, 2014, NXIVM moved to extend its time to serve the defendants to allow the State Police to continue their criminal investigation of the defendants, without making them aware of the existence of this civil lawsuit. Dkt. No. 5. In support of this motion, NXIVM cited to the ongoing criminal investigation and warrants that had

4

been executed on the residences of three of the defendants in this case on October 23, 2013. Id. On February 12, 2014, the Court granted this motion and extended NXIVM's deadline to serve the defendants until August 11, 2014. Dkt. No. 6.

Accordingly, NXIVM's Complaint was served on defendant Odato on August 2, 2014. In response, and after receiving a time extension to answer, defendant Odato filed his Motion to Dismiss on October 1, 2014 (hereinafter "Motion to Dismiss"), Dkt. No. 31. Defendant Odato's Motion to Dismiss NXIVM's claims under the Computer Fraud and Abuse Act ("CFAA") and Stored Communications Act ("SCA") is without merit, and should be denied in its entirety.

## ARGUMENT

### POINT I

### ALL EXTRINSIC DOCUMENTS AND INFORMATION REFERENCED IN DEFENDANT ODATO'S MOTION TO DISMISS SHOULD BE DISREGARDED.

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"), a court is "constrained to accept as true the factual allegations contained in the complaint and draw all interferences in plaintiff's favor." Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 154 (2d Cir. 2006). It is well established that when "considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." Kramer v. Time Warner, Inc., 937 F.2d 767 (2d Cir. 1991).

The purpose of Rule 12(b)(6) is to "test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a context regarding substantive merits. The Rule thus assesses the legal feasibility of the

complaint, ***but does not weigh the evidence that might be offered to support it***." Id. at 155 (emphasis supplied).   For this reason courts generally will not take extrinsic documents or information into account when deciding a motion to dismiss.   While two very limited exceptions to this rule exist, as discussed below, neither one of them applies to the present case.

### A. The Documents Cited and Attached by Defendant Odato are Not "Integral to the Complaint."

Under very limited circumstances a court may consider documents outside of the complaint when deciding a motion to dismiss pursuant to Rule 12(b)(6).   These documents may include "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference."   Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (quoting Int'l  Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)).   The court may also consider an extrinsic document where the complaint "relies heavily upon its terms and effect, which renders the document 'integral' to the complaint."   Chambers 282 F.3d at 153 (quoting Int'l Audiotext Network, Inc. 62 F.3d at 72).   The Second Circuit has held "a plaintiff's ***reliance*** on the terms and effect of a document in drafting the complaint is a necessary prerequisite the court's consideration of the document on a dismissal motion; ***mere notice and possession is not enough***."   Chambers, 282 F.3d at 153 (emphasis supplied). See also, Global Network Commc'ns, Inc., 458 F.3d at 154 (noting "[i]n most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the

complaint."). Additionally, "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document" and that there are "no material disputed issues of fact regarding the relevance of the document." Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006) (reversing district court's decision to dismiss complaint based on court's reliance on extrinsic evidence that was not "integral" to the complaint). Therefore, where documents referenced by a defendant in its motion to dismiss, were not relied upon by the plaintiff in drafting its Complaint, and the accuracy and relevance of statements contained in those documents is in dispute, they should be excluded from the court's consideration. Chambers, 282 F.3d at 153.

In the present case, Odato's Motion to Dismiss begins with a "Preliminary Statement" and "Statement of Facts", which are filled with misstatements of fact and references to inappropriate extrinsic documents, including articles written by himself and defendant Andrews, and documents and testimony from various unrelated court actions. See Motion to Dismiss at p. 1-8. Even a cursory review of the documents attached and referenced by defendant Odato in his Motion to Dismiss reveals that these documents were not "relied on" much less "integral" to the Plaintiff's drafting of the Complaint. See Defendant Odato's Motion to Dismiss at Exhibits A through J, Dkt. Nos. 31-3 through 31-12. Additionally, Plaintiff takes issue with the "accuracy and relevance" of every document attached by defendant Odato, including documents that he authored, and self-serving testimony and pleadings submitted by defendants and other individuals in unrelated litigation with NXIVM, many of which are taken out of context.[2]

---

[2] Plaintiff vehemently denies many of the factual allegations made by defendant Odato and the other defendants in the attached extrinsic documents, and therefore requests

Because defendant Odato's attachment of and references to these extrinsic documents is completely improper, Plaintiff requests that the Court exclude all of these documents and references in deciding defendant Odato's Motion to Dismiss.  Further, because defendant Odato's "Preliminary Statement" and "Statement of Facts" are composed entirely of references to these extrinsic documents, the Plaintiff requests that the Court disregard these entire sections of the Motion to Dismiss.

**B.  Defendant Odato's Requests for Judicial Notice are Inappropriate and Should be Denied.**

Federal Rule of Evidence ("F.R.E.") 201, states that a court may notice a judicial fact where that fact is either: "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  The Second Circuit has noted "[b]ecause the effect of judicial notice is to deprive a party of the opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence, caution must be used in determining that a fact is beyond controversy under Rule 201(b)."  Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998).

While a court may, under certain circumstances, take judicial notice of facts drawn from "judicial records," that notice may be taken "***not for the truth of the matters asserted in the other litigation***, but rather to establish the fact of such litigation and related filings." Global Network Commc'ns, Inc., 458 F.3d at 154 (quoting Int'l Star Class Yacht Racing Ass'n, 146 F.3d at 70 (emphasis supplied)). In Global

---

that Court disregard these documents, or provide NXIVM with an opportunity to respond to each factual misstatement contained therein pursuant to Argument Section 1C.

Network Communications, Inc., the Second Circuit found reversible error where the district court had considered a witness' testimony in a criminal case, when deciding a motion to dismiss where that witness' testimony was offered for the purpose of contradicting statements made by the plaintiff in the complaint. 458 F.3d at 156. See also, Johnson v. Levy, 812 F. Supp.2d 167, 177 (E.D.N.Y. 2011) (holding that taking judicial notice of testimony from deposition transcripts was improper where the defendant was requesting that the court accept those statements "over the facts asserted in the complaint."). The reasoning for this is that "[f]acts adjudicated in a prior case do not meet either test of indisputability contained Rule 201(b): they are not usually common knowledge, nor are they derived from an unimpeachable source." Int'l Star Class Yacht Racing Ass'n, 146 F.3d at 70. Similarly, judicial notice may be taken for the publication of newspaper articles, but that notice is also limited to "the fact of their publication" rather than for the "truth of the matter[s] asserted" in those articles. In re Merrill Lynch Tyco Research Sec. Litig., No. 03 CV 4080, 2004 WL 305809, at *4, n. 3 (S.D.N.Y. Feb. 18, 2004); F.R.E. 201(b).[3]

Defendant Odato cited Henik ex rel. Lanbranche & Co. v. Labranche, 433 F. Supp.2d 372 (S.D.N.Y 2006) in support of his argument that the court should take judicial notice of documents that contradict the "truth of factual allegations" that are asserted by plaintiff in its complaint. That case, however, involved a shareholder

---

[3]  The one exception to this rule is where judicial notice is taken of a document that is also "integral" to the claims alleged by the plaintiff in the complaint. In that situation, the statements in the document that contradict allegations in the complaint may be taken into account. That exact circumstance existed in Harris v. New York State Dept. of Health, 202 F. Supp.2d 143 (S.D.N.Y. 2002) which Odato cited in support of position. In the present case, none of the documents referenced by defendant Odato were "integral" to the claims NXIVM asserted against defendant Odato in its Complaint.

derivative lawsuit that the court dismissed on res judicata grounds because nearly identical claims had been brought and dismissed in a prior lawsuit. Therefore, that case is clearly distinguishable to the present case.

Defendant Odato has requested that this Court take judicial notice of numerous documents for the purposes of "the truth of the matters" asserted in those documents. For example, defendant Odato has quoted an excerpt of testimony from a defendant in a lawsuit NXIVM was previously involved in, wherein that defendant unleashes her dislike for NXIVM and lists all the ways that she believed the corporation had wronged her. See Motion to Dismiss at p. 4. This testimony is not relevant to the issues being litigated in this case. Defendant Odato has also cited from testimony allegedly regarding NXIVM's client list and access to NXIVM's "intranet." Id. at 17-19. This testimony does not meet the standards of F.R.E. 201 for common knowledge, reliability or accuracy. Further, taking judicial notice of this testimony would deprive NXIVM of the opportunity to "use rebuttal evidence, cross-examination and argument to attack this evidence." Int'l Star Class Yacht Racing Ass'n, 146 F.3d at 70. Because this testimony does not meet the criteria for F.R.E. 201, it should be disregarded in its entirety.

### C. Consideration of Extrinsic Evidence Requires Conversion of Defendant Odato's Motion to Dismiss to a Motion for Summary Judgment.

Pursuant to Fed. R. Civ. P. 12 (d) (hereinafter "Rule 12(d)"), on a motion to dismiss filed under Rule 12(b)(6) where "matters outside the pleadings are presented to and not excluded by the court, the motion **must be treated** as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Therefore, where a court opts to consider extrinsic evidence, the plaintiff must be given the opportunity to "conduct

10

appropriate discovery and submit the additional supporting material contemplated by" Rule 12(d).  Global Network Commc'ns, Inc. 458 F.3d at 155 (holding that the district court committed reversible error by considering extrinsic evidence and failing to convert defendant's motion to dismiss to a motion for summary judgment.).

In the present case, in the event this Court converts defendant Odato's motion to dismiss to a motion for summary judgment, Plaintiff requests that the court provide Plaintiff with notice of this conversion pursuant to Fed. R. Civ. P. 12(b) and an adjournment of this motion so that Plaintiff has the opportunity to conduct discovery to respond to the extrinsic evidence defendant Odato cited in his Motion to Dismiss.

**POINT II**

**NXIVM'S CFAA CLAIM
SHOULD NOT BE DISMISSED.**

**A.  NXIVM has Adequately Pled Defendant Odato's Violation of the CFAA.**

NXIVM has pled claims against defendant Odato under multiple provisions of the CFAA.[4]  A claim under 18 U.S.C. §1030(a)(2)(C) exists where a person "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer." NXIVM has alleged defendant Odato intentionally accessed NXIVM's Password Protected Website without authorization and obtained and copied NXIVM and its clients' confidential and

---

[4]  While NXIVM has pled CFAA claims against defendant Odato under 18 U.S.C. §1030(a)(2)(C), 18 U.S.C. §1030(a)(6)(A) and 18 U.S.C. §1030(a)(4) because NXIVM is only required to plead a claim under one of these provisions, and Odato has not moved to dismiss on the grounds that these claims are inadequately pled, NXIVM is providing an analysis for the application of its claim under only  18 U.S.C. §1030(a)(2)(C) for the purpose of opposing defendant Odato's Motion to Dismiss.

proprietary information, including NXIVM's confidential and proprietary client list and impaired the integrity of that information. See Complaint at ¶26, 59, 71-82, 100-102.

A CFAA claim also requires that the plaintiff plead either "damage" or "loss" against the defendant pursuant to 18 U.S.C. §1030(a)(2)(C).  While NXIVM pled both "damage" and "loss," the "damage" alleged is discussed in Section B.1.  With regard to "loss," the CFAA defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of the interruption of service."  18 U.S.C. §1030(e)(11).  To state a claim for loss under the CFAA, a plaintiff must further allege a "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value."  18 U.S.C. §1030(c)(4)(A)(i)(I).[5]  The loss can include a plaintiff's cost for "damage assessment," which includes the costs of the investigation of a defendant's unauthorized access to a computer.  I.M.S. Inquiry Mgmt Sys., Ltd. v. Berkshire Info. Sys., Inc., 307 F. Supp.2d 521, 526 (S.D.N.Y. 2004). NXIVM has included all of the requisite allegations for loss under the CFAA in its Complaint.  See Complaint at ¶26, 53, 56-61, 71-82, 100-102, 108, 109.

While defendant Odato's Motion to Dismiss describes defendant Odato's unauthorized access to NXIVM's Password Protected Website as a "technical violation," defendant Odato never denies that he did, in fact violate this federal law by his conduct. Motion to Dismiss at 1, 10.  Instead, defendant Odato attempts to argue that NXIVM's

---

[5]   A plaintiff can quantify the loss under multiple provisions of 18 U.S.C. §1030(c)(4)(A)(i), but for the purposes of NXIVM's claim, it alleged the aggregating loss of $5,000 during a one year period.

claims against him are untimely based on extrinsic evidence that is not relevant to the claims asserted by NXIVM in its Complaint.  That is simply untrue.

**B.  NXIVM's Claim under the CFAA was Timely Filed.**

Where a motion to dismiss is based on a statute of limitations defense, the defendant bears the burden of showing that "on the face of the complaint, it is clear that the claim is untimely." Nelly de Vuyst, USA, Inc. v. Europe Cosmetiques, Inc., No. 11 CV 1491, 2012 WL 246673, at *7 (S.D.N.Y. Jan. 6, 2012) (citing Harris v. City of New York, 186 F.3d 243, 250 (2d Cir. 1999)).  The court may only dismiss these claims where the plaintiff has "[pled] itself out of court." Nelly de Vuyst, USA, Inc., 2012 WL 246673, at *7 (quoting In re marchFIRST Inc., 589 F.3d 901, 904-05 (7th Cir. 2009)).

NXIVM's claim under the CFAA was timely filed because it was filed "within 2 years of . . . the date of the discovery of the damage." 18 U.S.C. §1030(g).  NXIVM filed its Complaint within two years of discovering the defendants illegally accessed its Password Protected Website and obtained and copied NXIVM and its clients' confidential and proprietary information and data.  NXIVM specifically filed its Complaint prior to the two year statute of limitations deadline under seal, to preserve the confidentiality of the ongoing criminal investigation against the defendants in this case. See Wolford Aff. at ¶3; Lennard Aff. at ¶4-8.

**1.  NXIVM Has Alleged "Damage" for Statute of Limitations Purposes.**

The CFAA defines "damage" as "any impairment to the integrity or availability of data, a program, a system, or information."  18 U.S.C. §1030(e)(8).  Second Circuit case law states that the interpretation of any statute should begin by reviewing the plain and simple meaning of the statute's language.  In U.S. v. Valle, No. 12 Cv 847, 2014

WL 2980256, at *60 (S.D.N.Y. June 30, 2014) the District Court for the Southern District of New York reviewed a CFAA claim in the criminal context, noting that in "resolving questions of statutory interpretation, courts must begin with the language of the statute itself," which requires looking at the "statute's plain meaning . . ." (internal citations omitted).  See also, Alcantara v. Bakery and Confectionery Union and Indus. and Int'l Pension Fund Pension Plan, 751 F.3d 71, 77 (2d Cir. 2014) (holding "interpretation begins with the plain text of the statute and where the text is unambiguous, also ends there because the judicial inquiry is complete." (internal citations omitted)).   In the present case, NXIVM has pleaded sufficient facts to satisfy the CFAA's definition of "damage," which includes, "any impairment to the integrity . . . of . . . data . . . or information." 18 U.S.C. §1030(e)(8). Specifically, NXIVM has alleged that defendant Odato illegally accessed its Password Protected Website without authorization, viewed and copied NXIVM and its clients' confidential and proprietary information, including NXIVM's client list, and thereby impaired the integrity of the information and the privacy of NXIVM's clients.  See Complaint at ¶26, 59, 71-82, 100-102.  These allegations satisfy the plain and simple reading of the definition of "damage" for statute of limitations purposes.

While there has been no Second Circuit case law definitively deciding this issue, a district court decision from within the Second Circuit supports this simple and straightforward interpretation of the term "damage."   In I.M.S. Inquiry Management Systems, Ltd. v. Berkshire Information Systems, Inc., 307 F. Supp.2d 521, 523 (S.D.N.Y. 2004) the plaintiff, who owned a specialized "e-Basket" website brought a CFAA claim against its competitor, who illegally accessed its website without

authorization and gathered and copied information from that website to misappropriate for its own use.  The defendant moved to dismiss the plaintiff's claim, arguing that plaintiff failed to adequately allege that defendant caused "damage," which warranted dismissal of the plaintiff's claim.  Id. at 525.   In denying defendant's motion to dismiss, the court held that the plaintiff's allegations that the defendant illegally accessed and copied data from plaintiff's website, which was for the exclusive use of plaintiff's customers for the purpose of creating its own competing system, was sufficient to allege "damage" under the CFAA. Id.

Case law outside of the Second Circuit similarly supports NXIVM's interpretation of "damage" under the CFAA.  In T-Mobile USA, Inc. v. Terry, 862 F. Supp.2d 1121, 1131 (W.D. Wa. 2012), the court found that the plaintiff had alleged "damage" where the defendant accessed and disseminated confidential information because maintaining the "integrity" of information or data "contemplates maintaining the data in a protected state" (quoting Shurgard Storage Ctrs., Inc. v. Safeguard Self Storage, Inc., 119 F. Supp.2d 1121, 1126-1127 (W.D. Wa. 2000)).[6]  Therefore, where a defendant illegally accesses a plaintiff's network and collects confidential information or data, "impairment" to the information or data's "integrity" has occurred.  Id.; 18 U.S.C. §1030(e)(8).  Similarly, in HUB Group, Inc. v. Clancy, No. Civ. A 05-2046, 2006 WL 208684, at *4 (E.D. Pa. Jan. 25, 2006) the court found that the plaintiff adequately pled "damage" under the CFAA, where he alleged "the integrity of its computer database was damaged through [defendant's] unauthorized access to confidential information."

---

[6] While defendant Andrews has cited case law that disagrees with the Shurgard court's analysis of the term "integrity," the more recent T-Mobile USA, Inc. decision illustrates that there are courts that are supportive of this analysis.

NXIVM has alleged that the defendants, including defendant Odato caused damage through illegally accessing, viewing and copying NXIVM and its client's confidential and proprietary data and information, including its client list, thereby impairing the integrity of that information and the privacy of NXIVM and its clients. See Complaint at ¶26, 59, 71-82, 100-102.

While defendant Odato has cited a number of cases in support of the argument that NXIVM has failed to allege damage in its Complaint, he cited only a couple of cases from within the Second Circuit, both of which are distinguishable from the present case. Defendant Odato cited FTA Mkt. Inc. v. Vevi, Inc., 11 CV 4789, 2012 WL 383945, at *4 (S.D.N.Y. Feb. 1, 2012), wherein the court found the statute of limitations began to run at the time the defendant accessed plaintiff's computer, because the plaintiff failed to definitively allege a later date for the "discovery of damage" in its Complaint.  In the present case, NXIVM has alleged both the dates that defendant Odato accessed NXIVM's Password Protected Website and the date when NXIVM first discovered that its site had been unlawfully accessed (January 2012).  Complaint at ¶53, 74, 79, 81.

The second case was Tan v. Doe, No. 14 cv 2663, 2014 WL 1779048 (S.D.N.Y. May 5, 2014), wherein the court dismissed the plaintiffs' pro se claim under the CFAA, because they failed to allege unauthorized access to a protected computer, or loss or damage under the CFAA.  In that case the plaintiffs alleged that the defendant accessed the plaintiffs' Facebook page, copied their wedding picture from that page, and used that photograph in a negative blog about the plaintiffs.  The facts in this case are clearly distinguishable from the present case, where NXIVM has alleged defendant

Odato's unauthorized access to its Password Protected Website, as well as "loss" and "damage" pursuant to the CFAA.  See Complaint at ¶26, 53, 56-61, 71-82, 100-102.

Many of the cases cited by defendant Odato involved a defendant who was being sued by a former employer for misappropriating information that they had accessed through their work computer or employer's network.   In these cases, the court concluded, that to establish the "damage" component of the CFAA, in addition to showing the defendant had obtained their former employer's information or data through unauthorized access, the employer should also show that their former employee somehow physically damaged its computer or there was an interruption in service. In Kluber Skahan & Assoc., Inc. v. Cordogen, Clark & Assoc., No. 08 cv 1529, 2009 WL 466812, at *8 (N.D. Ill. Feb. 25, 2009) the court dismissed plaintiff's claim and noted that the CFAA "was not meant to cover the disloyal employee who walks off with confidential information.   Rather, the statutory purpose is to punish trespassers and hackers" (internal citations omitted).  See also, Motorola, Inc. v. Lemko Corp., No. 08 C 5427, 2010 WL 1474795 (N.D. Ill. April 12, 2010) (holding that plaintiff failed to allege damage against its former employees for copying documents from their work computers); Condux Int'l., Inc. v. Haugum, No. 08-4824, 2008 WL 5244818 (D. Minn. Dec. 15, 2008) (same); Resdev, LLC v. Lot Builders Assoc., Inc., No. 6:04cv1374, 2005 WL 1924743 (M.D. Fla. Aug. 10, 2005) (dismissing employer's CFAA claim on summary judgment against former employees for failure to show "loss" or "damage"); Mintel Int'l Group, Ltd. v. Neergheen, No. 08 CV 3939, 2010 WL 145786 (N.D. Ill. Jan. 12, 2010) (holding that an employee who copied confidential information from his work computer did not properly allege "damage" or "loss" under the CFAA); U.S. Gypsum Co. v. Larfarge North

17

Am. Inc., 670 F. Supp.2d 737 (N.D. Ill. 2009 ) (same); Del Monte Fresh Produce, N.A.,

Inc. v. Chiquita Brands Int'l, 616 F. Supp.2d 805 (N.D. Ill. 2009) (same); Garelli Wong &

Assoc., Inc. v. Nichols, 551 F. Supp.2d 704 (N.D. Ill. 2008) (same); Andritz, Inc. v. S.

Maint. Contractor, LLC, 626 F. Supp.2d 1264 (M.D. Ga. 2009) (same).

The remaining cases cited by defendant Odato are outside of the Second Circuit

and are factually distinguishable from the present case.  Additionally, these cases were

not dismissed based on failure to allege the "discovery of damage" for statute of

limitations purposes, but for the plaintiff's failure to allege either "damage" or "loss"

under the CFAA.  See Farmers Ins. Exch. v. Auto Club Group, 823 F. Supp.2d 847

(N.D. Ill. 2011); Capitol Audio Access, Inc. v. Umemoto, 980 F. Supp.2d 1154 (E.D. Cal.

2013); NetApp., Inc. v. Nimble Storage, Inc., No. 5:13 CV 05058, 2014 WL 1903639

(N.D. Cal. May 12, 2014); Worldspan, L.P. v. Orbitz, LLC, No. 05 C 5386, 2006 WL

1069128 (N.D. Ill. Apr. 19, 2006).

Each of these cases is clearly distinguishable from the facts in the present case

or the facts presented in I.M.S. Inquiry Management Systems, Ltd., because the

defendants' unauthorized access and copying of NXIVM's Password Protected Website

and that of the plaintiff's website in I.M.S. Inquiry Management Systems, Ltd. is more

akin to the actions of a hacker than to that of a former or current employee.  As noted

above, the CFAA was originally a criminal statute with the purpose of punishing hackers

and trespassers. Kluber Skahan & Assoc., Inc., 2009 WL 466812, at *8.  See also,

LVRC Holdings LLC v. Brekka, 581 F.3d 1127, 1130-1131 (9th Cir. 2009) (holding that

the CFAA was designed "to target hackers who access computers *to steal information*

or to disrupt or destroy computer functionality . . .") (emphasis supplied).

2. **NXIVM Alleged "Discovery of Damage" Within Two Years of Filing its Complaint.**

NXIVM's claim under the CFAA was timely filed because it was filed "within 2 years of . . . the date of the discovery of the damage."  18 U.S.C. §1030(g).  NXIVM alleged that it first became suspicious that its Password Protected Website was being accessed without authorization in late 2011, but was unable to confirm those suspicions until January 2012. Complaint at ¶52, 53.  Because NXIVM was first able to confirm that its Password Protected Website was accessed without authorization in January 2012, this was the date of NXIVM's "discovery of the damage" for statute of limitations purposes.[7]

In Clark Street Wine and Spirits v. Emporos Systems Corporation, 754 F. Supp.2d 474 (E.D.N.Y. 2010), the plaintiff liquor store sued the company that installed its credit card processing services under the CFAA where the defendant's employee improperly accessed and misappropriated customers' credit card information from the plaintiff's system, and used that information in a fraudulent manner.  The defendant moved to dismiss plaintiff's claim under the CFAA, alleging that the plaintiff filed suit more than two years after the plaintiff "discovered" any alleged damage under the CFAA.  Id. at 485.  The defendant argued that plaintiff's receipt of a letter more than two years prior to filing suit, which informed the plaintiff that its store had been a "source of significant fraud activity" alerted the plaintiff to the fact that plaintiff's computer had been accessed without authorization to obtain its customers' credit card information.  Id.  In

---

[7]  NXIVM notes that it was not until after January 2012 that NXIVM was able to identify the defendants as the individuals who had illegally accessed the Password Protected Website, through correlating the defendants' IP addresses with those that had accessed the site.  Complaint at ¶56, 61.

response, the plaintiff argued that while the letter alerted plaintiff to fraudulent activity, it did not discover that its "computer system had been compromised" or was the source of that fraudulent activity, until much later. Id. at 485-86.   The plaintiff in that case contended that the fraudulent activity could have been caused by the misappropriation of information by one of its own employees "without any access to a computer." Id. at 486.   Ultimately the court denied dismissal of plaintiff's CFAA claim and agreed that plaintiff's discovery that its customer's credit card information had been used fraudulently, was not the same as discovering "any impairment to the integrity or availability of data, a program, a system or information," because the plaintiff's computer system was not specifically identified as the source of that confidential information. Id.

In the present case, while defendant Odato published an article admitting that he had a copy of NXIVM's client list in October 2007, like the plaintiff in Clark Street Wine and Spirits, this did not place NXIVM on notice that he or the other defendants had illegally accessed NXIVM's Password Protected Website because the website was **not the only source** of this information. Specifically, NXIVM has alleged that each of NXIVM's field trainers had their own separate client list, which together comprised the larger list, and that NIXVM's leadership and staff also had access to the client list, coach list and other confidential and proprietary information also contained on the website. See Complaint at ¶13, 16, 18, 19, 22-25, 31, 40, 41.   Further, defendant Odato's statements to the contrary[8] are pure fiction, and contradict specific allegations in the Complaint. Id.

---

[8]   Defendant Odato makes the following misstatements: "the Complaint alleges that NXIVM was aware of the public disclosure of confidential information taken from its password-protected site as early as October 2007" and "[o]nce NXIVM realized that

While defendant Odato cites a number of cases in support of his argument that the court's analysis regarding the "discovery of damage" under the CFAA should be based on "inquiry" notice, he cites no cases that contain similar facts or that contain a claim under the CFAA. For example, in <u>Koch v. Christie's Intern. PLC</u>, 699 F.3d 141 (2d Cir. 2012), the plaintiff brought claims against the defendants for fraud and RICO violations. In that case, the court concluded that the plaintiff was on "inquiry notice" that the wine he had purchased was fraudulent at the time that he received lab results indicating that there was only a 4.6% chance that the wine he had purchased was the age that the defendant had represented it to be. <u>Id.</u> at 147, 151. In <u>Twersky v. Yeshiva University</u>, 993 F. Supp.2d 429 (S.D.N.Y. 2014), the plaintiffs sued under state law claims, including fraud, and under Title IX for physical and sexual abuse they suffered as minors at a private school. The plaintiffs argued that while the abuse they suffered happened decades earlier, their claims did not accrue until one of the teachers at the school admitted that he had been aware of the sexual abuse, but did nothing to stop it. <u>Id.</u> at 440. The court concluded that the plaintiffs' claim accrued (except for tolling for infancy) at the time the abuse occurred because at that time the plaintiffs were aware of the injury, and who had caused the injury. <u>Id.</u> Defendant Odato also quoted <u>Staehr v. Hartford Fin. Servs. Grp. Inc.</u>, 547 F.3d 406 (2d Cir. 2008), which involved a statute of limitations defense for securities fraud. The facts in this case, as well as the legal

---

information available only from its password-protected website was available in the public domain, it was on inquiry notice of a problem." Motion to Dismiss at p. 16, 17. As stated above, NXIVM did not realize the client list or other information used by the defendants came from its Password Protected Website until at least January 2012, and NXIVM's Password Protected Website was not the exclusive source of this information. Complaint at ¶13, 16, 18, 19, 22-25, 31, 40, 41.

standard applied to the "notice of the facts" in a securities fraud case bear no relevance to the facts of legal standard in the present case.

As stated above, NXIVM did not become suspicious that the defendants had wrongfully accessed its Password Protected Website until late 2011, and did not confirm the "damage" until January 2012.  As discussed above, all references that defendant Odato has made to extrinsic evidence, including testimony in other cases, should not be considered because it does not meet the standards of F.R.E. 201, and is unreliable and unverified.  Therefore, defendant Odato's Motion to Dismiss should be denied.

### 3.  The Federal Discovery Rule Applies to Plaintiff's CFAA Claim.

Even if this Court were to find that NXIVM did not adequately allege "damage" under the CFAA for the purposes of the statute of limitations, Plaintiff's claim was filed within two years of learning that its claim under the CFAA existed.  The Second Circuit has held that "where [a] plaintiff would reasonably have had difficulty discerning the fact or cause of injury at the time it was inflicted, the so-called 'diligence-discovery rule of accrual' applies."  Kronisch v. United States, 150 F.3d 112, 121 (2d Cir. 1998).  Under this rule the accrual of a claim under a federal statute may be "postponed until the plaintiff has or with reasonable diligence should have discovered the critical facts of both his injury and its cause."  Id. at 121.  The Second Circuit has explained this as:

> [d]iscovery of the "critical facts" of injury and causation is not an exacting requirement, but requires only knowledge of, or knowledge that could lead to, the basic facts of the injury . . . [A] claim will accrue when the plaintiff knows, or should know, enough of the critical facts of inquiry and causation to protect himself by seeking legal advice.  A claim does not accrue when a person has a mere hunch, hint, suspicion, or rumor of a claim but such suspicions do give rise to a duty to inquire into the possible existence of a claim in the exercise of due diligence.

Id.   See also, <u>Thompson v. Metropolitan Life Ins. Co.</u>, 149 F. Supp.2d 38 (S.D.N.Y. 2001) (denying defendant's motion for summary judgment based on statute of limitations defense, where there was a question of fact regarding when the plaintiff knew of the "critical facts" supporting its claims pursuant to 42 U.S.C. §1981 and §1982).  In the present case, Plaintiff's Complaint alleges that it first became suspicious that its Password Protected Website had been accessed in late 2011, and was not able to confirm that unlawful access actually occurred until January 2012.  Complaint at ¶52, 53.  Once Plaintiff learned that its Password Protected Website had been unlawfully accessed in January 2012, its IT personnel continued to investigate to determine the individuals responsible for that unlawful access.  Because NXIVM could not initially identify the individuals involved in unlawfully accessing NXIVM's Password Protected Website, NXIVM provided the IP addresses to the State Police, who began a criminal investigation to determine the identity of the unauthorized users.  See Dkt. Nos. 5-1, 5-4 and 5-5.

In January 2012, when NXIVM contacted Client P and confirmed she had not recently logged into the Password Protected Website, this was one critical fact. Complaint at ¶53.  A second critical fact, which was necessary to bringing a lawsuit, was the identity of the unauthorized users.  NXIVM was not aware of the second critical fact supporting its claims under the CFAA against defendant Odato until long after January 2012, and is still not aware of the identity of all of the unauthorized users who accessed its Password Protected Website (currently named as "Does 1-59").  Because NXIVM's Complaint was filed in October 2013, Plaintiff filed its Complaint well within two years of

discovering the "critical facts" of its claims under the CFAA. Plaintiff therefore requests that defendant Odato's Motion to Dismiss be denied in its entirety.

**POINT III**

**NXIVM'S SCA CLAIM
SHOULD NOT BE DISMISSED.**

**A. NXIVM has Adequately Pled its SCA Claim Against Defendant Odato.**

Pursuant to 18 U.S.C. §2701(a) the SCA states "[w]hoever intentionally accesses without authorization a facility through which an electronic communication service is provided. . . and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished. . . " Case law has held that an "electronic communication service" includes interactive bulletin boards, and password protected interactive sites where the users with individual passwords can communicate with other users on the site. Ipreo Holdings, LLC v. Thomson Reuters Corp., No. 09 CV 8099, 2011 WL 855872 (S.D.N.Y. March 8, 2011).

In the present case, NXIVM has alleged that defendant Odato intentionally accessed NXIVM's interactive Password Protected Website through using Client P's username and password without authorization and obtained NXIVM and its clients' confidential and proprietary information. See Complaint at ¶59, 74-82, 100-102.

**B. NXIVM's Claim under the SCA was Timely Filed.**

Pursuant to 18 U.S.C. §2707(f) "[a] civil action under this section may not be commenced later than two years after the date upon which the claimant first discovered or had a reasonable opportunity to discover the violation." A plaintiff is deemed to have "discovered" the violation when the plaintiff first became aware that someone improperly

24

accessed their electronic communication service. <u>Zaratzian v. Abadir</u>, No. 10 CV 9049, 2014 WL 4467919, at *4 (S.D.N.Y. Sept. 2, 2014).   In the present case, NXVIM has alleged that it discovered the defendants' violation and unauthorized access to the Password Protected Website in January 2012.   Complaint at ¶53.

Defendant Odato appears to be arguing, however, that NXIVM had a "reasonable opportunity" to discover his unauthorized access to NXIVM's Password Protected Website prior to January 2012.   Recent case law from the Second Circuit, however, has established that whether plaintiff had a "reasonable opportunity" to discover the defendants' unauthorized access to its electronic communication service is a question of fact for the jury to decide.

In <u>Zaratzian v. Abadir</u>, No. 10 CV 9049, 2014 WL 4467919, at *2 (S.D.N.Y. Sept. 2, 2014), the plaintiff filed a complaint alleging claims under the SCA for her ex-husband's unauthorized access to her email account during the period from sometime prior to September 2005 through June 2009.   The defendant moved for summary judgment on plaintiff's SCA claim arguing that plaintiff had "reasonable opportunity" to discover the defendant's violation of the SCA for over two years prior to filing her complaint.   <u>Id</u>. at *4.   In reviewing the defendant's motion, the court noted "defendants have the burden to show the absence of a genuine issue of fact as to the untimeliness of [plaintiff's] claims."   <u>Id</u>.   More specifically, the defendant bears the burden of establishing that "no reasonable jury could [find that the plaintiff] did not have a reasonable opportunity to discover [the violation] more than two years before the start of the lawsuit."   <u>Id</u>. (quoting <u>Sparshott v. Feld Entm't, Inc</u>. 311 F.3d 425, 429 (D.C. Cir. 2003)).

The defendant in <u>Zaratzian</u> cited to two examples of specific facts that he argued directly or indirectly revealed to the plaintiff that he had been reading her emails. <u>Id</u>. at *4. The first was in a November 11, 2007 email, the defendant told the plaintiff that he was aware that she had dated three different men since the couple had separated. <u>Id</u>. The defendant alleged that the only reason he knew this fact was from reading the plaintiff's emails to third parties. <u>Id</u>. The second was based on a conversation in the summer or fall of 2008 that plaintiff had with her daughter where she learned that the defendant referred to plaintiff's boyfriend as an "ADD loser idiot." <u>Id</u>. Defendant argued this was a phrase that defendant had only learned through reading the plaintiff's emails. <u>Id</u>. The court reviewed the defendant's evidence and held the "Court cannot, as a matter of law, conclude that these two incidents would alert a reasonable person to the alleged violation. Accordingly, whether and when [plaintiff] had a reasonable opportunity to discover the violation is a question of fact for the jury." <u>Id</u>. at *5.

In the present case, defendant Odato is similarly arguing that the publication of certain facts by defendants Odato and Tighe and actions taken by defendant Tighe prior to January 2012, put NXIVM on "inquiry notice" that the defendants illegally accessed NXIVM's Password Protected Website. This allegation, however, does not account for the fact that the information published and used by the defendants was not exclusively maintained on NXIVM's Password Protected Website and was legitimately accessible to NXIVM's current coaches, field trainers and staff. Complaint at ¶13, 16, 18, 19, 22-25, 31, 40, 41. Further, as alleged in Plaintiff's Complaint, the detailed information regarding which defendants wrongfully accessed NXIVM's Password Protected Website was not actually determined by NXIVM until after January 2012. <u>Id</u>. at ¶56, 61.

Because there were other sources of this information, like the plaintiff in <u>Zaratzian</u>, NXIVM at the time of the publications reasonably did not suspect that the defendants were illegally accessing its Password Protected Website.  More importantly, defendant Odato's claim that NXIVM had a "reasonable opportunity" to discover the defendants' unauthorized access to NXIVM's Password Protected Website prior to January 2012, is a question of fact that is properly left to the discretion of a jury.  <u>Zaratzian</u>, 2014 WL 4467919, at *4.

Even if it were not premature to determine whether NXIVM had a "reasonable opportunity" to discover defendants' violations of the SCA on a motion to dismiss, case law supports NXIVM's argument that the information known to NXIVM was not enough to provide NXIVM with a "reasonable opportunity" to discover the defendants' violation of the SCA.  For example, in <u>Lopez v. Pena</u>, No. 2-12-cv-165, 2013 WL 819373, at *1 (N.D. Tex. March 5, 2013), plaintiff sued an officer under the SCA who had detained him at the airport and confiscated his wallet, for accessing his email after the officer found and used the plaintiff's log in and password information in the plaintiff's wallet. The defendant officer moved to dismiss the plaintiff's SCA claim as untimely, arguing that plaintiff had filed suit more than two years after the plaintiff had been detained, and the plaintiff had a "reasonable opportunity" to discover the officer had accessed his account at the time plaintiff had been detained.  <u>Id</u>. at *2.  At the time of plaintiff's detention and interrogation, the officer had showed the plaintiff a copy of a check that he had printed from the plaintiff's account, and the plaintiff knew the defendant had his wallet with his log in information for his email and bank accounts.  <u>Id</u>.  However, the court denied plaintiff's motion to dismiss and held "[i]t was plausible, however, that

[plaintiff] would not reasonably have concluded from these facts that someone had accessed emails on his [email] account." Id. at *2.

While defendant Odato cites case law in support of his position that NXIVM had a "reasonable opportunity" to discover his violation of the SCA prior to January 2012, each of these cases is distinguishable from the present case.  In Steinbach v. Vill. of Forest Park, No. 06 C 4215, 2009 WL 2857302 (N.D. Ill. Aug. 5, 2009) the court dismissed the plaintiff's SCA claims in her Third Amended Complaint where the claims were filed more than three years after the plaintiff became aware that someone had accessed her email without authorization and forwarded her emails to the defendant's account.  See also, Andes v. Knox, 905 F.2d 188, 189 (8th Cir. 1990) (dismissing a claim under the wiretapping act finding the limitation period began to run when plaintiff discovered the wiretap.);[9] Davis v. Zirkelbach, 149 F.3d 614 (7th Cir. 1998) (dismissing claim under the wiretapping act finding the limitation period began to run when the other party to a conversation with plaintiff informed plaintiff that the police had a copy of a tape of their conversation.).

Based on the above-referenced case law, Plaintiff has alleged a timely claim against defendant Odato for violations of the SCA.

## CONCLUSION

Based upon the foregoing, NXIVM submits that Defendant Odato's arguments are without merit, and that the Defendant Odato's Motion to Dismiss should be denied in its entirety.

---

[9]   Defendant Odato erroneously indicated in his Motion to Dismiss that this case involved an SCA claim.  Motion to Dismiss at p. 20.

DATED:  December 5, 2014

s/ Michael R. Wolford
Michael R. Wolford, Esq.
Bar Number: 502001
Laura A. Myers, Esq.
Bar Number: 517195
**THE WOLFORD LAW FIRM** LLP
600 Reynolds Arcade Building
16 East Main Street
Rochester, New York 14614
Telephone: (585) 325-8000
email: mwolford@wolfordfirm.com
email: lmyers@wolfordfirm.com

Pamela A. Nichols, Esq.
Bar Number: 103448
**O'CONNELL & ARONOWITZ, P.C.**
54 State Street, 9th Floor
Albany, New York 12207
Telephone: (518) 462-5601
email: pnichols@Oalaw.com

*Attorneys for Plaintiff NXIVM Corporation*