UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                                     :
NXIVM CORPORATION,                                                   :
                                                                     :
              *Plaintiff*,                                 :
                                                                     :
    v.                                                             :
                                                                     :   Case No.: 14-cv-01375-LEK-RFT
TONI FOLEY, JOSEPH O'HARA,                                           :
JOHN TIGHE, SUZANNA ANDREWS,                                         :
JAMES ODATO, and JOHN DOES 1-59,                                     :
                                                                     :
              *Defendants*.                                :
                                                                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


**REPLY BRIEF IN FURTHER SUPPORT OF MOTION BY
DEFENDANT SUZANNA ANDREWS FOR LEAVE TO FILE MOTION
PURSUANT TO RULE 11(c)(2), AND FOR SANCTIONS PURSUANT
TO 28 U.S.C. § 1927 AND THE INHERENT POWER OF THE COURT**


GREENBERG TRAURIG, LLP
54 State Street
Sixth Floor
Albany, New York 12207
Tel: (518) 689-1400

*Attorneys for Defendant Suzanna Andrews*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT .............................................................................................1

ARGUMENT .............................................................................................................................2

I.   SANCTIONS ARE APPROPRIATE AND NECESSARY IN LIGHT OF
     NXIVM'S DELIBERATE MISREPRESENTATIONS TO THE COURT ........................2

     A.   NXIVM Has Confirmed that Its Allegations Concerning the Discovery of
          the Alleged Unauthorized Access Were False When Made. .....................................2

     B.   NXIVM's Knowingly Brought Time-Barred Claims. ...............................................4

II.  MS. ANDREWS SHOULD BE GRANTED LEAVE TO FILE HER RULE 11
     MOTION FOR SANCTIONS .............................................................................................6

III. SANCTIONS ARE APPROPRIATE AND NECESSARY ................................................9

IV.  NXIVM'S ASSERTION OF "UNCLEAN HANDS" IS ABSURD ................................10

CONCLUSION .........................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Brickwood Contractors, Inc. v. Datanet Engineering, Inc.*,
    369 F.3d 385 (4th Cir. 2004) ................................................................................................. 8

*Brown v. Kay*,
    No. 11 Civ. 7304, 2012 WL 573198 (S.D.N.Y. Feb. 21, 2012) ........................................... 7

*Castro v. Mitchell*,
    727 F. Supp. 2d 302 (S.D.N.Y. 2010) ................................................................................... 7

*Langdon v. County of Columbia*,
    321 F. Supp. 2d 481 (N.D.N.Y. 2004) ............................................................................. 7-8

*In re Pennie & Edmonds LLP*,
    323 F.3d 86 (2d Cir. 2003) .................................................................................................... 7

*Schlaifer Nance & Co. v. Estate of Warhol*,
    7 F. Supp. 2d 362 (S.D.N.Y. 1998) ...................................................................................... 7

*Schlaifer Nance & Co. v. Estate of Warhol*,
    194 F.3d 323 (2d Cir. 1999) .................................................................................................. 7

*Sewell v. Bernardin*,
    795 F.3d 337 (2d Cir. 2015) ......................................................................................... 4, 8, 9

**Statutes**

Federal Rules of Civil Procedure 11(c)(2) ................................................................................ *passim*

28 U.S.C. § 1927 ............................................................................................................................ 1

Suzanna Andrews, by her attorneys, respectfully submits this reply brief in further support of her motion for leave to file a motion pursuant to Rule 11(c)(2), and for sanctions against NXIVM[1] pursuant to 28 U.S.C. § 1927 and the Court's inherent power.

## PRELIMINARY STATEMENT

It is not disputed that NXIVM and its counsel intentionally made material misrepresentations to the Court. NXIVM repeatedly represented to the Court that it "first became suspicious" that unauthorized users were accessing its website in "late 2011," that it thereafter commenced an investigation, and that it ultimately confirmed such access in January 2012. NXIVM and its attorneys now concede that they "first became suspicious" of unauthorized access and commenced their investigation, not in "late 2011," but on August 7, 2011. They further concede that they concluded that Ms. Pino's account was being misused in September, 2011, and that she confirmed that she had not used her account on October 25, 2011. NXIVM repeatedly and knowingly violated Rule 11 for the improper purpose of maintaining this vexatious and baseless lawsuit against its detractors.

In a desperate attempt to avoid sanctions, NXIVM and its attorneys claim that they believed a "mole" might have been responsible for the disclosure of NXIVM's materials, and did not have "definitive proof" that the website had been unlawfully accessed until after an investigator they hired spoke to Ms. Pino. Notably, there is not a single reference to a "mole" in the testimony and records NXIVM and its attorneys provided to law enforcement officials, in the Complaint, in NXIVM's previous opposition papers, or anywhere else. But even if these new, highly dubious allegations are true, they are merely an elaborate distraction. NXIVM's claims

---

[1] Capitalized terms not otherwise defined herein shall have the meaning set forth in Ms. Andrews's Memorandum of Law in Support of Motion by Defendant Suzanna Andrews for Leave to File Motion Pursuant to Rule 11(c)(2), and for Sanctions Pursuant to 28 U.S.C. § 1927 and the Inherent Power of the Court ("Andrews Mem.").

were time-barred when they were brought, and the Complaint and NXIVM's arguments in opposition to the motions to dismiss are replete with misrepresentations.[2]

NXIVM's self-serving assertions of "good faith" are belied by its blatant misconduct. NXIVM knew its federal claims were time-barred and therefore misrepresented the events underlying its discovery of the alleged unauthorized access. Even in the face of evidence belying its contentions, NXIVM continued to press its false allegations. Stuck in a web of deceit, NXIVM has abandoned its allegations, contradicted its prior sworn statements, and ultimately resorted to baseless finger-pointing. But NXIVM is no victim, it is a litigation machine that for years has misused the judicial system to torment its critics. Sanctions are not only appropriate, they are necessary to deter NXIVM's demonstrated pattern of misconduct.

## ARGUMENT

### I. SANCTIONS ARE APPROPRIATE AND NECESSARY IN LIGHT OF NXIVM'S DELIBERATE MISREPRESENTATIONS TO THE COURT

#### A. NXIVM Has Confirmed that Its Allegations Concerning the Discovery of the Alleged Unauthorized Access Were False When Made.

NXIVM's submissions establish that paragraphs 52 and 53 in the Complaint, as well as numerous contentions based on those allegations, were utterly lacking in support. (*See* Ex. A hereto.) For example, NXIVM first became suspicious of unauthorized access and investigated such access in August and September, 2011, not "[i]n late 2011." (Compl. ¶ 52; *see, e.g.*, Opp. Br. at 15 (confirming that NXIVM "had *suspicions* as early as September 2011, that third parties had unlawfully accessed NXIVM's password protected website") (emphasis in original).) NXIVM first contacted Ms. Pino and received confirmation from her in October 2011[3] − not "in

---

[2] A chart reflecting NXIVM's numerous misrepresentations is attached hereto as Exhibit A for the Court's convenience. (*See also* Andrews Mem. at 13-15.)

[3] NXIVM and its counsel have put forward nothing more than hearsay allegations concerning the "investigator" who allegedly spoke with Ms. Pino on October 25, 2011. They fail to disclose to the Court when they hired the investigator and why they hired an investigator in the first place.

2

January 2012 − that she had not used her username and password since 2003." (*Id*. ¶ 53; *see, e.g.*, Opp. Br. at 8.)  NXIVM shut off Ms. Pino's access to the website on September 27, 2011, and thus NXIVM's records did not show "use of [Ms. Pino's] username and password through 2011." (Compl. ¶ 53.)

Unable to deny the falsity of the many allegations and contentions identified by Ms. Andrews (Andrews Mem. at 14-15), NXIVM addresses only one.  NXIVM contends that its use of the term "late 2011" in the Complaint was "objectively reasonable" because it did not have "a 'reasonable belief' that NXIVM's website had been unlawfully accessed" until after its investigator had spoken to Ms. Pino and obtained an affidavit from her in January 2012.  (Opp. Br. at 15.)  This *non sequitur* has nothing whatsoever to do with the truth or falsity of NXIVM's allegations.  NXIVM repeatedly represented to the Court that it first became suspicious of unlawful access in "late 2011," thereafter commenced an investigation, and in January 2012 received confirmation from Ms. Pino that she had not accessed the website.  (*See, e.g.,* Compl. ¶¶ 52-53; Pl. Mem. at 3, 14, 15, 17; Dkt. No. 82.)  These material allegations were demonstrably false and intended to mislead, and NXIVM's conduct was objectively ***unreasonable***.

Mr. Wolford, the only one of NXIVM's four declarants to address the issue, states that the term "late 2011" was used to describe "conduct that occurred in late October 2011"—*i.e.*, when NXIVM and its attorneys were "able to confirm their suspicions" that unauthorized access had occurred by speaking to Ms. Pino.  (Wolford Decl. ¶ 15.)  However, the Complaint does not allege that NXIVM ***confirmed*** its suspicions in "late 2011," but rather that "suspicions arose" at that time, causing NXIVM to commence an investigation.  (Compl. ¶¶ 52-53; *see also* Pl. Mem. at 14 (NXIVM "first became suspicious that its Password Protected Website was being accessed without authorization in late 2011, but was unable to confirm those suspicions it [*sic*] personnel

3

completed their initial investigation in January 2012").)  Moreover, Mr. Wolford's self-serving contention cannot be squared with his use of the term "late 2011" in his September 15, 2015 letter to the Court:  "Suspicious activity prompted NXIVM in late 2011 to undertake an in-depth investigation into whether someone had improperly obtained Client P's login credentials to gain access to NXIVM's site."  (Dkt. No. 82.)  The use of the term "late 2011" was not only utterly lacking in support, it was intended to deceive the Court as to the timeliness of NXIVM's claims.

### B. NXIVM's Knowingly Brought Time-Barred Claims.

That NXIVM knew its federal claims were untimely is established by NXIVM's purposeful distortion of the facts underlying its discovery of the allegedly unauthorized access. Had NXIVM believed that its claims were not time-barred, then there would have been no need to allege (falsely) that it was not until "late 2011" that it first suspected unlawful access. NXIVM's arguments in support of the timeliness of its claims were predicated on these misrepresentations and were made in bad faith.

Nonetheless, NXIVM contends that the assertion of its time-barred claims was "objectively reasonable" because the law governing CFAA and SCA claims was "not settled" until the Second Circuit's decision in *Sewell v. Bernardin*.  (Opp. Br. at 16-18.)  However, the federal statutes of limitation at issue are not ambiguous, and the parties agreed on the test to be applied under those statutes.[4]  *Sewell* did not effect any changes to those tests.  Notwithstanding its new "mole" theory, NXIVM cites no case law or other authority suggesting that its claims, which were filed more than two years after NXIVM commenced its investigation, might be

---

[4] NXIVM acknowledged that the issue was whether it had a "reasonable opportunity" to discover the alleged access, and that the proper inquiry was whether the posting of its allegedly confidential information by certain of the defendants "would alert a reasonable person to the alleged violation." (Pl. Mem. at 18 (citation omitted); *see id.* at 17-21.)  NXIVM now concedes, as it must, that the August 7, 2011 posting by Mr. Tighe did in fact alert it to the alleged violation and caused it to conduct an investigation regarding access to the website.  The possibility that the system may have been accessed by hackers, moles or defendants is utterly irrelevant.

4

timely. NXIVM's claims were destined to fail even under the cases it relied on in opposing the motions to dismiss, and NXIVM knew it.

NXIVM ignores the fact that the arguments in its opposition to the motions to dismiss were premised on material misrepresentations. NXIVM relied primarily on two arguments concerning the timeliness of its claims. First, it argued that the period of limitations was not triggered before January 2012 because "it first became suspicious that its Password Protected Website was being accessed without authorization in late 2011, but was unable to confirm those suspicions it [*sic*] personnel completed their initial investigation in January 2012." (Pl. Mem. at 14; *see also id*. at 3, 15, 17.) This argument, based entirely on misrepresentations, is worse than specious—it is a fabrication.[5]

Second, NXIVM argued that the posting of its confidential information on Mr. Tighe's website "did not place NIXVM on notice" of unlawful access "because the website was not the only source of this information." (Pl. Mem. at 14; *see also id*. at 19.) This contention is also a sham in light of NXIVM's previous sworn representations that the information posted by Mr. Tighe on August 7, 2011, "could only have come from the NXIVM computers." (Bronfman Dep., Dkt. No. 86-3, at 13; *see also* Myers Sept. Dep., Dkt. No. 86-3, at 3 (stating that the NXIVM list posted on Mr. Tighe's blog site "appeared to be a mirror image of information accessible only through the NXIVM website by members of NXIVM").)

NXIVM also argues that its claims were not frivolous because the Court "dedicated six pages to discussing the timeliness of NXIVM's claims against Andrews." (Opp. Br. at 16; *see also id*. at 22 ("Had there been no colorable argument to be made, a simple sentence dismissing

---

[5] NXIVM's attorneys represent that they believed, at the time the Complaint was filed, that the statutes of limitations were triggered on October 25, 2011, when Ms. Pino allegedly confirmed that she had not accessed the website in years. (*See* Nichols Decl. ¶ 10; Wolford Decl. ¶ 14.) Thus, NXIVM's contentions that the statutes of limitations were not triggered until after January 2012 (*see, e.g*., Pl. Mem. at 14, 15, 19; Dkt. No. 82) were not only objectively unreasonable, they were made with subjective bad faith.

5

the claims as baseless would have sufficed.").) But the Court did not have the benefit of the truth—or what NXIVM now contends is the truth—when it decided Ms. Andrews's motion, because NXIVM misrepresented when it suspected potential unauthorized access and commenced its investigation. In any event, the notion that the length of a court's opinion is proportional to the validity of the claims asserted is absurd.

NXIVM's current submissions serve only to buttress the Court's conclusion that NXIVM's claims were time-barred. For example, while the Court noted that NXIVM "offered no explanation as to why Plaintiff's IT personnel did not investigate unauthorized access to the website immediately after the publication of the Andrews, Odato, or Tighe articles," (Decision at 15), it is undisputed that NXIVM *did in fact* commence its investigation immediately after publication of Mr. Tighe's article on August 7, 2011. This is not a case, like those cited by NXIVM, where a party's argument was "merely a losing one[.]" (Opp. Br. at 19 (citation omitted).) Rather, NXIVM filed a Complaint containing knowingly false and intentionally misleading allegations, and pressed specious arguments premised on misrepresentations. NXIVM's conduct here is exactly the type of abuse that Rule 11 was designed to guard against.

II.     MS. ANDREWS SHOULD BE GRANTED LEAVE TO FILE HER
        RULE 11 MOTION FOR SANCTIONS

As expected, NXIVM complains that Ms. Andrews's Rule 11 motion is procedurally defective because the Court dismissed the Complaint before the expiration of the 21-day safe harbor. NXIVM does not dispute that Ms. Andrews complied with the express terms of Rule 11(c)(2), since the motion was filed more than 21 days after service and NXIVM did not withdraw or otherwise correct its false statements. Nor does NXIVM dispute that the policy behind Rule 11 would be thwarted if NXIVM is able to escape the consequences of its misdeeds due to of the fortuitous timing of the Court's decision. Finally, NXIVM does not dispute that the

rule it proposes would unfairly penalize Ms. Andrews for her courtesy in allowing NXIVM a full two weeks after service of informal notice before service of the Rule 11 motion.

NXIVM's claim that post-judgment sanctions are impermissible under Rule 11 is unfounded. (Opp. Br. at 10.) There is nothing in Rule 11 itself that prohibits sanctions post-judgment. Moreover, the suggestion that courts lack jurisdiction to impose post-judgment sanctions has been squarely rejected by the Second Circuit. *See Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 333 (2d Cir. 1999) ("The District Court clearly had jurisdiction to impose sanctions irrespective of the status of the underlying case because the imposition of sanctions is an issue collateral to and independent from the underlying case.").

The only issue is whether the Court may impose sanctions when a decision dismissing the case has been issued prior to the expiration of the 21-day safe harbor period. While Ms. Andrews candidly informed the Court that the law is not settled in this area (Andrews Mem. at 19 and n.5), NXIVM not only contends that the law is "well settled" in the Second Circuit, it argues that "post-judgment pursuit of Rule 11 sanctions" is sanctionable. (Opp. Br. 11 n.2.) None of the cases relied upon by NXIVM for this assertion, however, involved the unique set of circumstances at issue here. *See In re Pennie & Edmonds LLP*, 323 F.3d 86, 89 (2d Cir. 2003) (analyzing the proper *mens rea* standard for *sua sponte* sanctions under Rule 11(c)(3), no Rule 11 motion served before dismissal of case); *Schlaifer Nance & Co. v. Est. of Warhol*, 7 F. Supp. 2d 362, 374 (S.D.N.Y. 1998) (procedural requirements of Rule 11 not met, motion filed after trial, decision and appeal); *Brown v. Kay*, No. 11 Civ. 7304, 2012 WL 573198, at *2-3 (S.D.N.Y. Feb. 21, 2012) (same); *Castro v. Mitchell*, 727 F. Supp. 2d 302, 307-08 (S.D.N.Y. 2010) (no Rule 11 motion served before voluntary dismissal of case); *Langdon v. Cty. of Columbia*, 321 F. Supp. 2d 481, 485 (N.D.N.Y. 2004) (no Rule 11 motion served prior to judgment, motion filed twenty-three days

7

after judgment was entered); *see also Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 388-90 (4th Cir. 2004) (no Rule 11 motion served before summary judgment granted)

NXIVM does not dispute that a party can waive the safe-harbor period afforded under Rule 11(c)(2) by making clear that it intends to press its claims notwithstanding a Rule 11 motion. (Opp. Br. at 13-14.) Rather, NXIVM contends that no waiver may be found here based on NXIVM's September 15, 2015 letter to the Court.[6] Contrary to NXIVM's assertions, however, the letter did not "merely assert[] a legal argument in an effort to distinguish a new case that Andrews brought to the Court's attention." (*Id.* at 13.) Rather, the letter argued that the Second Circuit's decision in *Sewell* "demonstrates that NXIVM's claims" were timely and that the Court should "deny Andrews' motion." (Dkt. No. 82.) And contrary to NXIVM's counsel's assertion,[7] NXIVM pressed in the letter the very factual allegations that Ms. Andrews's challenged as false in the Rule 11 motion. (*See id.* (restating paragraphs 52 and 53 in the Complaint, and alleging that "the logins using Client P's username and password on their face appeared legitimate and valid").) NXIVM clearly rejected Ms. Andrews's Rule 11 motion and intended to stand on its allegations. Indeed, in its current submissions, NXIVM confirmed that it had no intention of withdrawing its claims. (Bronfman Decl. ¶ 55; Nichols Decl. ¶ 16.)

NXIVM's uncorroborated and self-serving allegations that NXIVM was "considering whether to amend the Complaint or otherwise address the motion" after the September 15 letter was filed is preposterous. (Opp. Br. at 14; *see also* Wolford Decl. ¶ 30; Nichols Decl. ¶ 16.) Tellingly, although the Decision was issued just two business days before the expiration of the safe harbor, NXIVM does not describe how it might have amended the Complaint or what "other

---

[6]   NXIVM fails to address its earlier statement, in an August 21, 2015 letter to Ms. Andrews's counsel, that "we do not agree with the allegations contained in your August 14, 2015, letter[.]" (Grygiel Decl. Ex. 2, Dkt. 86-7.)

[7]   *See* Wolford Decl. ¶ 29, Dkt. No. 93 ("NXIVM's September 15, 2015 letter only described NIXVM's (sic) interpretation of the Sewell decision and ***did not allege factual statements*** . . . ." (emphasis supplied).)

8

action" it might have taken. Moreover, NXIVM contends that "nothing said in the Complaint was inaccurate, untruthful, or in bad faith." (Nichols Decl. ¶ 14; *see also* Bronfman Decl. ¶ 55 (stating NXIVM "still believes[] the complaint had merit and should not be withdrawn" and that Ms. Andrews had interpreted NXIVM's sworn testimony "out of context and incorrectly").) Similarly, NXIVM contends that the Second Circuit's decision in *Sewell* was distinguishable and did not require withdrawal of the claims. (Nichols Decl. ¶ 15; *see also* Dkt. No. 82.) NXIVM had no intention of either withdrawing or appropriately correcting its misrepresentations, and thus NXIVM was not prejudiced by any theoretical non-compliance with Rule 11(c)(2).

### III. SANCTIONS ARE APPROPRIATE AND NECESSARY

There can be no dispute that NXIVM's allegations and contentions that "suspicions arose" in "late 2011" were not only "without a colorable basis" when made, they were intentionally dishonest. Also dishonest were NXIVM's contentions that Mr. Tighe's posting did not put NXIVM on notice of potential unlawful activity. NXIVM structured the Complaint to deceive the Court, and asserted legal arguments predicated on factual misrepresentations. Caught red-handed, NXIVM denies its misconduct, yet its arguments are pure sophistry. NXIVM's bad faith is manifest. (*See* Andrews Mem. at 24 (detailing evidence of bad faith).)

Further evidence of NXIVM's bad faith is its shifting sworn testimony. NXIVM's contention that Ms. Andrews "mischaracterized" the prior testimony of Benjamin Myers and Clare Bronfman is unsupported. (Opp. Br. at 21-22 n.5.) Indeed, Ms. Andrews mostly quoted from the testimony, and supplied the Court with the testimony in full. Manifestly, NXIVM is now telling the Court a story that is completely different than what it told the State Police and this Court previously. The declarations submitted by NXIVM were not intended to "correct [any] mischaracterizations" (*id.*), but rather to reverse NXIVM's prior sworn testimony and the logical inferences that must be drawn from that evidence.

9

NXIVM's detailed statements to the State Police and its allegations in the Complaint never mention its purported suspicions of a "mole." Significantly, allegations of a "mole" were also missing from NXIVM's opposition to the motions to dismiss, notwithstanding NXIVM's arguments that its website was not the only source of NXIVM's materials. But now, faced with the possibility of sanctions, NXIVM's papers are littered with references to the possibility of a "mole." NXIVM's self-serving and uncorroborated assertions are simply not credible.

## IV.  NXIVM'S ASSERTION OF "UNCLEAN HANDS" IS ABSURD

In an obvious attempt to distract from its own misconduct, NXIVM repeatedly and falsely accuses Ms. Andrews of unlawfully accessing NXIVM's website and obtaining unidentified "information and materials for use in an article critical of NXIVM[.]" (Opp. Br. at 1; *see id*. at 23-25.) These allegations have been rejected, as NXIVM concedes, by the law enforcement authorities NXIVM pressed to bring charges. NXIVM's disingenuous claim that Ms. Andrews "has never denied" its allegations ignores the procedural posture of this case. (*Id.* at 1.) As NXIVM and its counsel well know, the allegations of the Complaint must be accepted as true on a motion to dismiss, and therefore Ms. Andrews never had an opportunity to dispute NXIVM's allegations. Had NXIVM timely filed its claims – which it failed to do for reasons it fails to explain – Ms. Andrews would not only have disputed the allegations, she would have proven them wrong. Indeed, even without the benefit of discovery, it is clear that the allegations set forth in the Complaint are largely a work of fiction.

## **CONCLUSION**

For the foregoing reasons, Defendant Suzanna Andrews respectfully requests that this Court grant leave to file her motion for Rule 11 sanctions, grant her request for sanctions pursuant to 28 U.S.C. § 1927 and the Court's inherent authority, including the assessment of attorneys' fees, costs, and expenses, and grant her such other and further relief as the Court deems appropriate.

10

                                          Respectfully submitted,

Dated:   October 26, 2015                  GREENBERG TAURIG, LLP

                                     By:   *Michael J. Grygiel*
                                              Michael J. Grygiel
                                              Cynthia E. Neidl
                                              54 State Street, 6th Floor
                                              Albany, New York 12207
                                              Tel: (518) 689-1400
                                              grygielm@gtlaw.com

                                              *Attorneys for Defendant Suzanna Andrews*

*ALB 1888762v2*