UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

NXIVM CORP.,

                                        Plaintiff,

            -against-                                        1:14-cv-1375 (LEK)

TONI FOLEY, *et al.*,

                                        Defendants.

_____

## MEMORANDUM-DECISION and ORDER

## I.    INTRODUCTION

In a Memorandum-Decision and Order issued on September 17, 2015, the Court dismissed

Plaintiff NXIVM Corporation's ("Plaintiff") claims against Defendants as untimely.  See Dkt. No.

83 ("September Order").  This matter returns to the Court on Defendant Suzanna Andrews's

("Andrews") Motion for sanctions and leave to file a Rule 11 motion.  Dkt. No. 86 ("Motion").[1]

Plaintiff filed a Response and Andrews filed a Reply.  Dkt. Nos. 91 ("Response"); 98 ("Reply").[2]

Plaintiff subsequently filed a Letter Motion seeking to strike Andrews's Reply on the basis that it

did not comply with Local Rule 7.1 and to impose sanctions for her noncompliance.  Dkt. No. 100

("Plaintiff's Letter Motion").  Andrews responded to Plaintiff's Letter Motion.  Dkt. No. 101.  For

the following reasons, Andrews's Motion for sanctions is denied and Plaintiff's request that

sanctions be imposed against Andrews for her failure to comply with the Local Rules is also denied.

_____

[1] *Pro se* Defendant Joseph O'Hara ("O'Hara") filed a Letter Request seeking to join
Andrews's Motion.  Dkt. No. 89.  The Court granted the Request in a Text Order on October 8,
2015.  Dkt. No. 90.

[2] The exhibits attached to Plaintiff's Response were filed as separate docket entries, rather
than annexed to the Response.  See Dkt. Nos. 92-96 ("Exhibits").

## II.    BACKGROUND

### A.  Overview

Plaintiff commenced this action against Andrews and four other Defendants on October 22, 2013, alleging violations of the Computer Fraud Abuse Act ("CFAA"), 18 U.S.C. § 1030, Stored Communications Act ("SCA"), 18 U.S.C. § 2071, as well as various state law causes of action.  See Dkt. No. 1 ("Complaint").  Plaintiff alleged that as early as 2006, Defendants began accessing confidential information on Plaintiff's password-protected website without authorization.  Id. Plaintiff claims that it did not discover Defendants' unauthorized access until "late 2011."  Id. ¶ 52. Plaintiff conducted an investigation in early 2012 and discovered that the log-in credentials of "Client P," a former NXIVM coach who had not accessed the website since 2003, had been used to access the website on hundreds of occasions between 2006 and 2011.  Id. ¶¶ 53, 57.

### B.  Motion to Dismiss

Andrews filed a Motion to dismiss for failure to state a claim on September 30, 2014.  Dkt. No. 27 ("Motion to dismiss").  Defendants James Odato ("Odato") and O'Hara filed their own respective Motions to dismiss.  See Dkt. Nos. 31 ("Odato Motion"); 64 ("O'Hara Letter Request"). The Court ruled collectively on all three Motions in its September Order.  Sept. Order.  Defendants argued that Plaintiff's claims were untimely, as Plaintiff was aware of Defendants' alleged unlawful access to its website more than two years prior to filing its Complaint on October 23, 2013.  See generally Mot. to dismiss.  A claim under the CFAA must be brought "within two years of the date of the act complained of or the date of the discovery of the damage." 18 U.S.C. § 1030(g).  Under the SCA, a civil action must be commenced no "later than two years after the date upon which the claimant first discovered or had reasonable opportunity to discover the violation." 18 U.S.C. §

2

2701(a).  Accordingly, if Plaintiff knew of unauthorized access to its website or had a reasonable opportunity to discover unauthorized access prior to October 23, 2011, its claims would be untimely.

In support of their Motions to dismiss, Defendants requested that the Court take judicial notice of testimony provided by one of Plaintiff's executive board members, Clare Bronfman ("Bronfman"), and Plaintiff's former client, Susan Dones, at an unrelated bankruptcy proceeding in the Western District of New York on September 21, 2011.  Odato Mem. at 17-19; see also Dkt. No. 31-11 (Transcript, In re Dones, No. 10-45608 (Bankr. W.D. Wash. 2011)) ("Transcript").  Bronfman's testimony indicated that Plaintiff suspected Defendant John Tighe ("Tighe") of obtaining Plaintiff's client list from its website.  Transcript at 90:3-12; 91:11-25.  Plaintiff's counsel also accused Dones of providing confidential information from Plaintiff's website to O'Hara, indicating that Plaintiff had knowledge that Defendants were working together and communicating via e-mail about publicizing Plaintiff's client list and other confidential information prior to October 23, 2011.  Id. at 57:01-60:25.  Additionally, the Complaint contained numerous allegations that Defendants published information that was only available on the confidential portion of the website, indicating that Plaintiff should have suspected or did actually suspect unauthorized access prior to October 23, 2011.  See Compl. ¶¶ 37-41; 84-86; 91-92.

Accordingly, the Court determined that Plaintiff's CFAA and SCA claims were untimely and subject to dismissal.  Sept. Order.  Having dismissed Plaintiff's only federal causes of action, the Court declined to exercise supplemental jurisdiction over the remaining state law claims.  Id.

**C.  Motion for Sanctions**

On August 31, 2015, Andrews served Plaintiff with a Rule 11 motion, declaration, and

accompanying memorandum of law. Mot. at 2. Pursuant to Rule 11's safe-harbor provision, Defendants were required to provide Plaintiff with twenty-one days to either withdraw the Complaint or rectify the offending conduct before filing a Rule 11 Motion with the Court. FED. R. CIV. P. 11(c)(2). The Motion was not filed with the Court. The Court issued the September Order dismissing Plaintiff's Complaint in its entirety on September 17, 2015, while the safe-harbor period was still pending. Plaintiff now seeks leave to file the Rule 11 Motion.

Andrews argues that sanctions are appropriate because Plaintiff was aware that its claims were time-barred when it commenced this action and deliberately attempted to mislead the Court with the vague allegation that it discovered the alleged breach "in late 2011." See generally Mot. In support of the Motion, Andrews offers evidence that Plaintiff submitted to the New York State Police in furtherance of a criminal investigation into Defendants' conduct that was first disclosed to Andrews's counsel on July 23, 2015. Id. at 6. Andrews argues that this evidence shows that Plaintiff first suspected unauthorized access to its website in August 2011. Id. In addition, Andrews contends that Plaintiff suspended Client P's access to the website on September 27, 2011. Id. Andrews argues that this evidence shows that Plaintiff knew its claims were time barred when it commenced this action.

## III.   DISCUSSION

### A.  Rule 11 Motion

#### 1. Legal Standard

The purpose of Rule 11 is to deter "baseless filings in district courts." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990). "Drawing a line between zealous advocacy and frivolous conduct, Rule 11 provides a vehicle for sanctioning an attorney, a client, or both." United

States v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers of Am., AFL-CIO, 948 F.2d 1338, 1343 (2d Cir. 1991).  Under Rule 11(b)(2), an attorney presenting a complaint to the court "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."  FED. R. CIV. P. 11(b)(2).  Since the inquiry must be "reasonable under the circumstances," liability for Rule 11 violations "requires only a showing of objective unreasonableness on the part of the attorney or client signing the papers."  Ted Lapidus, S.A. v. Vann, 112 F.3d 91, 96 (2d Cir. 1997).

When ruling on a motion for Rule 11 sanctions, a district court "must adhere to the procedural rules which safeguard due process rights."  Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 58 (2d Cir. 2000); Perpetual Sec. v. Tang, 290 F.3d 132, 142 (2d Cir. 2002) ("The district court's awarding of sanctions . . . in contravention of the explicit procedural requirements of Rule 11 was . . . an abuse of discretion.").  Rule 11 requires that a motion for sanctions be filed as a separate motion and describe the specific conduct that allegedly violates Rule 11(b).  FED. R. CIV. P. 11(c)(2).  Rule 11 was amended in 1993 to include a "safe harbor provision," which requires the party seeking sanctions to first provide the opposing party with formal notice of their intent to seek sanctions.  Id.  The opposing party then has 21 days to withdraw or appropriately correct the potentially offending statements before a Rule 11 Motion can be filed with the Court. Id.; see also Storey v. Cello Holdings, LLC, 347 F.3d 370, 389 (2d Cir. 2003).  The purpose of this provision is to encourage parties to abandon questionable contentions by allowing them to avoid sanctions with the timely withdrawal of meritless claims.  FED. R. CIV. P. 11; Adv. Comm. Notes,

1993 Amend.

A motion that does not comply with Rule 11's safe harbor provision must be denied.  Bryant v. Britt, 420 F.3d 161, 163 n.2 (2d Cir. 2005) (affirming district court's decision to deny sanctions where movant failed to comply with Rule 11(c)(2)); see also Star Mkt. Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd., 682 F.3d 170, 175 (2d Cir. 2012) ("The safe-harbor provision is a strict procedural requirement.").

Additionally, Rule 11 "does not contemplate the filing of a motion when there is no pleading or other paper before the Court that violates Rule 11(b)."  Castro v. Mitchell, 727 F. Supp. 2d 302, 308 (S.D.N.Y. 2010).  Courts routinely dismiss Rule 11 motions that are filed "after a point in the litigation when the lawyer sought to be sanctioned lacked an opportunity to correct or withdraw the challenged submission."  In re Pennie & Edmonds LLP, 323 F.3d 86, 89 (2d Cir. 2003); see also Homkow v. Musika Records, Inc., No. 04 Civ. 3587, 2009 WL 721732, at *20 (S.D.N.Y. Mar. 18, 2009) ("A party cannot bypass the safe-harbor requirement by submitting the motion at a point in the litigation in which it is no longer possible for the offending party to correct or retract the allegedly sanctionable statement."); Rojas v. Theobald, No. 02-CV-3623, 2007 WL 245133, at *9-10 (E.D.N.Y. Aug. 23, 2007) (denying defendant's Rule 11 motion because "motion was filed after all of Plaintiffs' claims against him had been dismissed or withdrawn" and thus "Plaintiffs could no longer withdraw their challenged claims").

### 2. Analysis

Andrews served Plaintiff with a copy of the Rule 11 Motion on August 31, 2015.  Mot. at 2.  The Court issued the September Order dismissing the case on September 17, 2015.  Sept. Order.  Therefore, the case was dismissed before the twenty-one-day safe-harbor period had run.

Consequently, the Court finds that Defendants' Rule 11 Motion must be denied based on its failure to comply with the safe-harbor provision. While this case represents a procedural anomaly, the Second Circuit has made it clear that Rule 11's safe-harbor provision is a strict procedural requirement that must be followed. <u>Star Mkt. Mgmt., Inc.</u>, 682 F.3d at 175; <u>Bryant</u>, 420 F.3d at 163 n.2. The Court recognizes Andrews's attempt to comply with Rule 11, however, the case law on this topic makes clear that the safe-harbor provision requires strict compliance. In addition, Rule 11 sanctions are inappropriate where, as here, a case has been dismissed in its entirety. <u>Rojas</u>, 2007 WL 245133, at *9-10.

Andrews argues that a letter filed by Plaintiff on September 15, 2015 in response to a Notice of supplemental authority she previously filed with the Court shows that Plaintiff had no intention of addressing the untimeliness of its claims during the safe-harbor period. Mot. at 7; Dkt. No. 82 ("September Letter"). While Andrews is correct that Plaintiff continued to argue that its claims were timely just six days before the safe-harbor period ended, the Court is unable to speculate that Plaintiff would not have withdrawn its claims in the remaining six days. As previously stated, the safe-harbor provision is a strict procedural requirement that must be followed.

**B. Sanctions Pursuant to the Court's Inherent Power**

Rule 11 allows a court to impose sanctions *sua sponte* "after notice and a reasonable opportunity to respond." FED. R. CIV. P. 11(c)(1); <u>see also</u> <u>id.</u> 11(c)(3) ("On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)."). In order to impose sanctions pursuant to its inherent power, a district court must find that the claim lacked a colorable basis and that the claim was brought in bad faith. <u>Schlaifer Nance & Co. v. Estate of Warhol</u>, 194 F.3d 323 (2d Cir. 1999). However, a court cannot

7

impose sanctions after a party is no longer able to withdraw or amend the potentially offending pleading unless the court makes a finding of subjective bad faith. See In re Pennie & Edmonds LLP, 323 F.3d 86, 91 (2d Cir. 2003) (finding that where the sanctions are "initiated by the District Court . . . long after [the party] had an opportunity to correct or withdraw the challenged submission . . . a 'bad faith' standard, applicable for contempt proceedings, is especially appropriate and is what the rule-makers contemplated"). "Because of their very potency, inherent powers must be exercised with restraint and discretion." Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991). "Furthermore, when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power." Id. at 50.

### 1. Colorability

"[A] claim is entirely without color when it lacks any legal or factual basis." Sierra Club v. United States Army Corp. of Eng'rs, 776 F.2d 383, 390 (2d Cir. 1985). Conversely, a claim is colorable "when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim." Nemeroff v. Abelson, 620 F.2d 339, 348 (2d Cir. 1980). "The question is whether a reasonable attorney could have concluded that facts supporting the claim might be established, not whether such facts actually had been established." Id. Accordingly, a claim that fails as a matter of law does not necessarily lack any basis at all. Schlaifer Nance & Co., 194 F.3d at 337.

A claim brought under the CFAA must be brought "within 2 years of the date of the act complained of or the date of the discovery of the damage." 28 U.S.C. § 1030(g). A claim under the

SCA "may not be commenced later than two years after the date upon which the claimant first discovered or had a reasonable opportunity to discover the violation." 18 U.S.C. § 2707(f). Plaintiff contends, and the Court agrees, that prior to August 2015, the case law in the Second Circuit interpreting how the statutes of limitation for the CFAA and SCA operated was not well settled. Resp. at 9. In August 2015, the Second Circuit issued its opinion in Sewell v. Bernardin, clarifying that the statute of limitations under the CFAA begins when damage is actually discovered, and that under the SCA, the statute begins to run when a plaintiff first has a reasonable opportunity to discover the violation. 795 F.3d 337, 341-42 (2d Cir. 2015). The Second Circuit clarified that the statutes of limitation are not tolled while a plaintiff conducts an investigation into the allegedly wrongful conduct. Id. at 342.

The Court finds that Plaintiff's claims were colorable for the purposes of opposing Andrews's Motion. Prior to Sewell, Plaintiff could have reasonably believed that the statute of limitations was tolled while it conducted an internal investigation into Defendants' conduct. Moreover, the Court recognizes the divergent approaches taken by district courts within the Second Circuit prior to Sewell when evaluating the timeliness of CFAA and SCA claims. Accordingly, the Court finds that there was sufficient "legal and factual support, considered in light of the reasonable beliefs of the individual making the claim" to find that Plaintiff's claims were colorable at the time of filing. Nemeroff, 620 F.2d at 348.

### 2. Bad Faith

Bad faith is found where a party is motivated by improper purposes, such as harassment or delay. See Schlaifer Nance & Co., 194 F.3d at 336. "[B]ad faith may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation." Olivieri v. Thompson, 803

F.2d 1265, 1272 (2d Cir. 1986).  A finding of bad faith may only be inferred "if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay."  <u>Shafii v. British Airways, PLC</u>, 83 F.3d 566, 571 (2d Cir. 1996); <u>see also</u> <u>Robinson v. Purcell Const. Corp.</u>, No. 14-cv-969, 2015 WL 5603022, at *7-8 (N.D.N.Y. Sept. 22, 2015) (denying defendant's motion for sanctions after finding that plaintiff's claims were "legally and factually challengeable," and therefore not objectively unreasonable.)

The Court finds that Plaintiff's claims were not so completely without merit as to justify a finding that they were brought in bad faith.  As previously discussed, when Plaintiff commenced this action, the law was unsettled as to the operation of the statutes of limitation for CFAA and SCA claims.  Andrews has failed to show that Plaintiff was motivated by an improper motive so as to justify a finding of bad faith.

Moreover, even if the Court were to determine that Plaintiff acted in bad faith, the Court cannot direct Plaintiff to pay Defendants' attorney's fees and other expenses pursuant to its inherent authority "because attorney's fees can only be included in a sanction that is imposed on motion." FED. R. CIV. P. 11(c)(4).

### C.  28 U.S.C. § 1927

Andrews also seeks sanctions under 28 U.S.C. § 1927, which provides that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.   As with sanctions imposed under the court's inherent authority, the "[i]mposition of sanctions under § 1927 requires a clear showing of bad faith."  <u>Olivieri</u>, 803 F.2d at 1273.  An award under § 1927 is proper only when "the attorney's actions are so completely

without merit as to require the conclusion that they must have been undertaken for some improper purpose . . ." Carrasquillo v. City of Troy, No. 02-CV-12321, 2006 WL 304031, at *3 (N.D.N.Y. Feb. 8, 2006) (quoting Olivieri, 803 F.2d at 1273).

For the same reasons previously stated, the Court does not find that Andrews has met her burden of making a clear showing that Plaintiff commenced this action in bad faith. Accordingly, the Court declines to impose sanctions under 28 U.S.C. § 1927.

### D. Andrews's Failure to Comply with Local Rule 7.1

Plaintiff requests that sanctions be imposed against Andrews for filing an impermissible Reply to Plaintiff's Response. Letter Mot. Local Rule 7.1(b)(2) provides that a party may not file reply papers in support of a non-dispositive motion without the express permission of the Court. Local Rule 7.1(b)(2). Andrews filed her Reply without seeking the Court's permission. Accordingly, Andrews's Reply is stricken from the docket and was not considered by the Court when ruling on Andrews's Motion for sanctions. However, the Court does not find that this conduct constitutes bad faith. Accordingly, Plaintiff's request for sanctions against Andrews is denied.

## IV.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant Suzanna Andrews's Motion (Dkt. No. 86) for sanctions and leave to file a Rule 11 motion is **DENIED**; and it is further

**ORDERED**, that Plaintiff's Letter Motion (Dkt. No. 100) requesting sanctions against Andrews is **DENIED**; and it is further

**ORDERED**, that Defendant Suzanna Andrews's Reply (Dkt. No. 98) is **STRICKEN** from the docket; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      December 02, 2015
              Albany, New York

Lawrence E. Kahn
U.S. District Judge